UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Brianna J. Adams, Patricia U. Adams, | ) | Civil Action |
| Blenda A. Rice and Jordan M. Rice | ) | No. _____ |
| Plaintiff, ET AL | ) | |
| | ) | |
| v. | ) | |
| | ) | |

Michael W. Morrissey, Edward J. Doherty, Michael Kasprzak, John DeRusha, Mar L. Reillly, James Redd, Sr., James Saba, Ryan W. Resendes, Daniel Flavin, Thomas A. Turco II, Michael Rodrigues, Chris Pacheco, Leo Marchand, Jr., Jason p. Robichaud, John Doe No. 1 (Smith), Jamie Chapman, Michael Luntuk, Calvin Vega, Ashraff Gomma, John Doe No. 2, Chris Pakuris, John Doe No. 3, (Bishop), William M. Miller IV, Jason Badger, Rowan Hill, Scott Black, Brian Leavitt, Joseph W. Kelly, Vanessa L. Rattigan, Carol Lawton, Marc Dubois, Kirsten Rickis, Elizabeth Meffen, MPCH Services, Inc., Donna Cardullo, Danielle Peterson, Stephen P. Fagan, Joshua Riley, Jennifer Dos Santos, Jane Doe No.1 (Stacy), Aysh Hameed, Debra Vogt, Donal Levesque, Guido Guevara, Ian L. McDonald, Earle H. Bereier, Fernando Vieira, Nicholas Wolschun, Jane Doe No. 2, (Nurse), Aaron Valla, Jane Doe No. 3 (Nurse), Barbara Lunn, David Maloney, Jane Doe No. 4 (Nurse), Jennifer Mocha, Jane Doe No. 5, Sean Cullen, Michael Munns, James, Redd, Jr., Christ Thibault, Peter Diage, Arthur Dasilva, Fredrick Sleeper, Jane Doe No. 4 (Nurse), Nheko J. Pawlowski, Sabrina Pires, John Doe No. 4 (Sgt. Broulliard), John Doe No. 5 (c/o Venditti), David Cafarelli, John Doe No. 6, John Doe No. 7, (c/o Gusatuncsio), Jane Doe No. 6, Mist Rousseau, Edward Trahan, John Doe No. 8 (c/o Smith), Kurt DeMoura, John Dean, Linda Albohn, James Cronin, Marianna Dolan, Kathleen Evers, Matthew Borges, Steven Mr. Bournazian, John A. Dankievitch, Samuel Ramus, John Doe No. 9, John Doe No. 10, Jane Doe No. 7, Blas Nunez, John Doe No. 11, John Doe No. 12, Eric Carbal, Phil Viciros, John Doe No. 13, John Doe No. 14, John Doe No. 15, Stephanie Collins, Caren Lane, Robert L. Price

## Definitions of Words

MCI C/J = MCI Cedar Junction

Def = Defendant

Def(s) = Defendants

## COMPLAINT WITH JURY DEMAND

## INTRODUCTION

____ This is a Class-Action lawsuit brought forth by a Class of Plaintiffs, whom are related, against Defendants employed at (A) Department of Corrections, (B) MPCH Services, Inc., and (C) Norfolk County District Attorney's Office whom has engaged in a continuing conspiracy campaign of harassment in an attempt to silence the class's voice against the Nazi Style illegal "Death Penalty System" employed against the lone incarcerated Plaintiff, Jordan M. rich, which he mailed DNA evidence to the other members of the Class of Plaintiff, i.e., Brianna J. Adams, Patricia U. Adams and Blenda A. Rice, to prove said "system as forth in Part I-IX below.

____ The death penalty system is where Prison Correctional Staff and medical staff intentionally infect Prisoners with Hepatitis "C" and HIV with bodily fluids from infectious disease positive Aryan nation prisoner hitmen's DNA (i.e., feces, hair, saliva, semen and urine).  Massachusetts State Prisons are being conducted as Nazis death camp in Auschwitz, Poland set forth in Part I – IX below.  The way Prison Officials Defendants infect prisoners with said infectious diseases is by giving infectious disease positive Aryan nation prisoner hitmen contraband (i.e., cigarette, drugs takeout food, etc.) or special privileges in exchange for their bodily fluids (i.e., feces, saliva, semen and urine) which is used to contaminate other prisoners food, toothbrush, toothpaste, face cloth, towel, bed linen, clothes, sink.

____ Plaintiffs B. Adams, P. Adams and B. Rice have had their Civil and Human Rights violated in an attempt to coerce them into silence because Plaintiff J. Rice mailed them the said DNA evidence of prison employees and their said hitmen to prove the unholy prison alliance and "death penalty system" as set forth in Part I – IX below.

___ The death penalty system was first implemented against Plaintiff J. Rice in an attempt to coerce a guilty plea in the false criminal assault case Prison Guard James Cheever filed in Wrentham District Court that was prosecuted by Def. Morrissey who would dismiss the case due to the powerful video evidence proving no assault occurred as set forth in Part I-VI below.

___ Then the death penalty remained status quo in an attempt to further suppress the Class's voice because they began to continue revealing how they had prison staff and said hitmen said DNA to prove Plaintiff, J. Rice, is being biologically tortured and having the illegal death penalty system implemented against him which are Civil and Human Rights crimes as set forth in Part III-IX below.

___ In an attempt to further aid the conspiracy to silence the Class by rogue Prison Officials Defendants, et al, I s the fact Def. Morrissey, whom is a District Attorney of Norfolk County and Def. Doherty, whom is the Clerk of Wrentham District Court, both again abused the awesome powers of their offices to maliciously, selectively and vindictively prosecute Plaintiff and concealed blatant crimes against the Class via granting arbitrarily immunity to their co-defendants prison officials as set forth in Part III-IX below.

___ In painstaking details, the Class sets forth in plain bold English who, when, what and why below, i.e., drafted in Part I-IX below.

### Jurisdiction

The Court has jurisdiction over the Class of Plaintiffs claims of violation of federal constitutional rights under 42 U.S.C.§1331(1) and 1343.

The Court has supplemental jurisdiction over the Plaintiffs State law tort claims under 28 U.S.C.§1367.

## PARTIES

1. Plaintiff Brianna J. Adams is a citizen of these United Stated of America whose address is 41 Russell Road, Brockton, MA 02302.

2. Plaintiff Patricia U. Adams is a citizen of these United States of America whose address is 41 Russell Road, Brockton, MA 02302

3. Plaintiff Blenda A. Rice is a citizen of these United States of America and a retired federal employee whose address is 177 Battles Farm Drive, Brockton, MA 02301

4. Plaintiff Jordan M. Rice is a State Prisoner in Massachusetts whose mailing address is 177 Battles Farm Drive, Brockton, MA 02301

5. Defendant Michael Morrissey is the District Court of Norfolk Country whose address is Norfolk County District Attorney Office, 45 Shawmut Road, Canton, MA 02021. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

6. Defendant Edward J. Doherty is the Clerk of Wrentham District Court whose address is Wrentham District Court, 60 East Street, Wrentham, MA 02093. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

7. Defendant James Saba was the Superintendent of MCI Cedar Junction (C.J.) who is represented by the Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

8. Defendant Michael Kasprzak is a Correctional Officer at MCI C.J. who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

9   Defendant John DeRusha is a Correctional Officer at MCICJ who is represented by Dept. of
    Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all
    relevant times, he acted under color of state law and is being sued in his individual and
    official capacities.

10  Defendant Mark L. Reilly is a Correctional Officer employed for the Dept. of Corrections who
    is represented by the Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600,
    Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is
    being sued in his individual and official capacities.

11  Defendant James Redd, Jr. is a Correctional Officer at MCICJ who is represented by Dept. of
    Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all
    relevant times, he acted under color of state law and is being sued in his individual and
    official capacities.

12  Defendant Ryan W. Resendes is a Correctional Officer at MCICJ who is represented by Dept.
    of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all
    relevant times, he acted under color of state law and is being sued in his individual and
    official capacities.

13  Defendant Daniel Flavin is a Correctional Officer at MCICJ who is represented by Dept. of
    Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all
    relevant times, he acted under color of state law and is being sued in his individual and
    official capacities.

14  Defendant Thomas A. Tarco, III is the Commissioner of Corrections who is represented by
    Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300.
    At all relevant times, he acted under color of state law and is being sued in his individual and
    official capacities.

15  Defendant Michael Rodrigues is the Superintendent of MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

16  Defendant Christopher Pacheco is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

17  Defendant Leo Marchand, Jr. is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

18  Defendant Jason P. Robichard is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

19  Defendant John Doe No 1 (Smith) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

20  Defendant James Chapman is a mental Health Clinician for the Dept. of Corrections. She resides at P. O. Box 325, Ludlow, MA 01056. At all relevant times, she acted under color of state law and is being sued in her individual and official capacities.

21  Defendant Calvin Vega is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

22  Defendant Ashraff Gomma is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

23  Defendant John Doe No. 2 is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

24  Defendant Chris Pakuris is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

25  Defendant John Doe No. 3 (Bishop) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

26  Defendant William Mason Miller IV is a Prisoner at MCI Cedar Junction, P. O. Box 100, South Walpole, MA 02071. He is being sued in his individual and official capacities.

27  Defendant Jason Badger is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all

relevant times, he acted under color of state law and is being sued in his individual and official capacities.

28  Defendant Rowan Hill is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

29  Defendant Brian Leavitt is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

30  Defendant Steven Fagan is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

31  Defendant Scott Black is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

32  Defendant Joseph W. Kelly was a Mental Health Clinician at MCICJ.  At all relevant times, he acted under color of State law and is being sued in his individual and official capacities.

33  Defendant Carol Lawton is the Director of Classification at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

34  Defendant Marc Dubois is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

35  Defendant Elizabeth Meffen is a Social Worker employed by MPCH Services, Inc., who provides mental health care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in her individual and official capacities.

36  Defendant Kirsten Rickis is a Social Worker employed by MPCH Services, Inc., who provides mental health care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in her individual and official capacities.

37  Defendant MPCH Services, Inc. is a corporation that has a contract with Massachusetts to provide medical and mental health services to prisoners in her care and custody of the Department of Corrections. They have a business address of 110 Turnpike Road, Suite 308, Westborough, MA 01581. At all relevant times, the corporation and its employees are being sued in their individual and official capacities.

38  Defendant Vanessa L. Rattigan is a Registered Nurse and is the Health Service Administrator employed by MPCH Services, Inc. who is supposed to insure prisoners at MCICJ receive adequate medical and mental health care. At all relevant time, she acted under color of State law and is being sued in her individual and official capacities.

39  Defendant Donna Cardullo is a nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

40  Defendant Danielle Peterson is a nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in her individual and official capacities.

41  Defendant Joshua Riley is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

42  Defendant Jennifer DosSantos is a Registered Nurse employed MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

43  Defendant Jane Doe No. 1 (a.k.a. Stacy) is a Nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

44  Defendant Linda Albohn is the Grievance Coordinator for MPCH Services, Inc. who provides mental health and medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

45  Defendant Aysha Hameed is a Medical Doctor for MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of state law and is being sued in her individual and official capacities.

46  Defendant Marianne Dolan is a nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

47  Defendant James M. Cronin is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all

relevant times, he acted under color of state law and is being sued in his individual and official capacities.

48  Defendant Debra Vogt is a Social Worker employed by MPCH Services, Inc. who provides mental health care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

49  Defendant Donald Levesque was the Superintendent of MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

50  Defendant Guido Guevara is a Registered Nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

51  Defendant Ian MacDonald is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

52  Defendant Earle Bercier is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

53  Defendant Ferando Vieira is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

54  Defendant Nicholas Wolschun is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

55  Defendant Kelly J. Santiago is a Social Worker employed by MPCH Services, Inc. who provides mental health care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

56  Defendant Jane Doe No. 2 is a Nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

57  Defendant Aaron Valla is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

58  Defendant Jane Doe No. 3 is a Nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

59  Defendant Barbara Lunn is a Nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

60  Defendant David Maloney is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

61  Defendant Jane Doe No. 4 is a Nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

62  Defendant Jane Doe 5 is a Nurse employed MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

63  Defendant Jennifer Mocha is a Nurse employed by MPCH Services, Inc. who provides medical care for prisoners at MCICJ.  At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

64  Defendants Sean Cullen is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

65  Defendants Michael Munns is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

66  Defendants Chris Thibault is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

67  Defendant Peter Diagle is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA  02110-1300.  At all

relevant times, he acted under color of state law and is being sued in his individual and official capacities.

68  Defendant Arthur DaSilva is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

69  Defendant Frederick Sleeper is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

70  Defendant Jane Doe No. 6 is a Nurse employed MPCH Services, Inc. who provides medical care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

71  Defendant Nneka J. Pawlowski is a Correctional Program Officer [a.k.a. Case Worker] at MPCH Services, Inc. who provides medical care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in their individual and official capacities.

72  Defendant Sabrina Pires is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

73  Defendant John Doe No. 4 (Broulliard) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

74 Defendant John Doe No. 5 (Vendetti) is Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

75 Defendant David Cafarelli is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

76 Defendant John Doe No. 6 is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

77 Defendant Matthew Borgus is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

78 Defendant James Munns is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

79 Defendant Kathy Evers is a Mental Health Clinician employed by MPCH Services, Inc. who provides mental health care for prisoners at MCICJ. At all relevant times, she acted under color of State law and is being sued in her individual and official capacities.

80  Defendant Steven M. Bournazian is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

81  Defendant John Doe No. 7 (a.k.a. CO Gusaton [JIC]) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

82  Defendant Jane Doe No. 6 (a.k.a. Esther) is a Social Worker employed by MPCH Services Inc. who provides mental health care for prisoners at MCICJ. At all relevant times, she acted under color of state law and is being sued in her individual and official capacities.

83  Defendants Mist Rousseau is a Correctional Program Officer [a.k.a. Case Worker] at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

84  Defendants Edward Tranhan is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

85  Defendants John Doe No. 8 (C.O. Smith) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

86  Defendant Kurt DeMoura is a Correctional Officer at MCICJ who is represented by Dept. of
Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all
relevant times, he acted under color of state law and is being sued in his individual and
official capacities.

87  Defendant John Dean is a Correctional Officer at MCICJ who is represented by Dept. of
Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all
relevant times, he acted under color of state law and is being sued in his individual and
official capacities.

88  Defendant John A. Dankiervitch is a Correctional Officer at MCICJ who is represented by
Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300.
At all relevant times, he acted under color of state law and is being sued in his individual and
official capacities.

89  Defendant Samuel Ramos is a Correctional Officer at MCICJ who is represented by Dept. of
Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all
relevant times, he acted under color of state law and is being sued in his individual and
official capacities.

90  Defendants John Doe No. 9 (a.k.a. C.O. Curry) is a Correctional Officer at MCICJ who is
represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston,
MA 02110-1300. At all relevant times, he acted under color of state law and is being sued
in his individual and official capacities.

91  Defendant John Doe No. 10 (a.k.a. C.O. Ramos) is a Correctional Officer at MCICJ who is
represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston,
MA 02110-1300. At all relevant times, he acted under color of state law and is being sued
in his individual and official capacities.

<u>92</u>  Defendant Jane Doe No. 7 (a.k.a. C.O. Giannetti) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

<u>93</u>  Defendant John Doe No. 11 (a.k.a. C.O. Tigano) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

<u>94</u>  Defendant John Doe No. 12 (a.k.a. C.O. Baptista) is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

<u>95</u>  Defendant Blas Nunez is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

<u>96</u>  Defendant Mikhail Morar is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

<u>97</u>  Defendants John Doe No. 13 is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

98   Defendant Eric Carbal is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

99   Defendant Phil Viciros is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

100  Defendant John Doe No. 14 is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

101  Defendant John Doe No. 15 is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

102  Defendant Stephanie Collins is an Assistant Deputy Commissioner who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

103  Defendant Caren Lane is the Treasurer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

104 Defendant Douglas Bower is the former acting Superintendent at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

105 Defendant Robert L. Price is a Correctional Officer at MCICJ who is represented by Dept. of Corrections Legal Division, 70 Franklin Street, Suite #600, Boston, MA 02110-1300. At all relevant times, he acted under color of state law and is being sued in his individual and official capacities.

**PART I**

This is the First bogus Court Case brought by Prison Officials that was dismissed which led to the Nazi Style Death Penalty System being employed against Plaintiff J. Rice and the continuing conspiracy, i.e., campaign of harassment of the Class.  The Class doesn't know if the

Individuals in this section should be defendants under the Rico statute or any other statute for the continuing conspiracy because if it weren't for their malfeasant actions the campaign of harassment is still on going to date wouldn't never taken place so the class reserves the right to amend this complaint.

**C.O. James Cheever Court**

106 On June 5, 2006, at MCI Cedar Junction (MCICJ) in the punitive segregation unit known as 10-Black C.O. James Cheever and C.O. Corey Hanks did disseminate breakfast to prisoners.

107 Cheever gave out food trays and Hanks gave out coffee and milk.

108 Cheever claimed [Plaintiff] J. Rice threw a cup of extremely hot coffee in his face which J. Rice was issued a Disciplinary Report (D-Report) for (see Exhibit No. 1) but the pictures of Cheever's taken allegedly that day show absolutely NO injuries (See Exhibit No. 2).

109 Sometime between Sept. 14, 2006 thru December 1, 2006, J. Rice had a disciplinary hearing where the video of the fictitious assault claim by Cheever was produced which clearly depicts the cup of coffee falling off the cell bars on its own accord and more importantly not in the direction that Cheever stood.[1]

110 On Sept. 14, 2006, J. Rice was arraigned in Wrentham District Court for A & B on Correctional Officer and A&B with Dangerous weapon filed by Cheever (See Exhibit No.3).

111 On or about Nov. 9, 2006, the A&B on Correctional Officer was dropped and amended with A&B Public Employee because Norfolk County District Office announced the case wasn't going to be indicted to Superior Court.

112 The case was litigated ProSe by J. Rice in Wrentham District Court until on or about Jan. 15, 2008 where J. Rice announced to the court that he would be seeking an interlocutory appeal of denied ProSe motions.

113 While awaiting appointment of appellate counsel the Norfolk County District Attorney sought to circumvent J. Rice's appellate rights and punish him for exercising his statutory appellate right with a vindictive indictment.

---

[1] Plaintiff J. Rice can positively state the date or the disciplinary hearing due to the fact his legal documents has been repeatedly seized. Co-Plaintiffs B. Adams, P. Adams and B. Rice have a copy of the video mentioned in this paragraph.

114 On Dec. 10, 2008, J. Rice filed Motion for Funds for Toxicology blood test and testing of food because the campaign of harassment began in an attempt to coerce a guilty plea (See Exhibit No. 4 at page No. 4). Therefore, this is the earliest date that Defendant Morrissey became aware that his prison officials co-defendants began employing the death penalty system against Plaintiff J. Rice in an attempt to coerce a guilty plea. Plaintiff also on the same date filed a Motion to order Prison Officials to stop using food as punishment which was denied by Judge Sanders.

115 On Feb. 2, 2009, J. Rice filed another ProSe Motion, i.e., Motion To Dismiss due to Commonwealth's indictment and supporting Memorandum or Law based on U.S. Supreme Court's decision in Blackledge v. Perry, 417 U.S. 21, 27-28 (1974)(Vindictive prosecution claim arises when prosecutors uses criminal charges to penalize defendant for exercising right to appeal). (See Exhibit No. 4 at pg. No. 5).

116 On May 29, 2009, said District Attorney's Office filed a Motion For Nolle ProSequi which was granted by Judge Janet L. Sanders without J. Rice present in Court (See Exhibit No. 4 at pg. No. 7 and Exhibit No. 5).

117 It should be noted [Defendant] Michael W. Morrissey was the District Attorney at Norfolk County at the time of this false case which will be an important factor because he would conspire with Prison Officials to cover-up their Civil and Human Rights Criminal Violations of the Class by bringing a second false criminal assault charge against J. Rice which is the subject of this Civil Action. (See Exhibit No. 5)

118 The video evidence of the fictitious assault was produced and it demonstrated no assault occurred, i.e., the hot cup of coffee falling off the cell door bars which Plaintiff B. Rice has a copy of to date. Therefore, Morrissey should've taken caution any further assault claims by Prison Officials against Jordan Rice as any responsible District Attorney would've done in

executing his/her duties, i.e., probe and valid future criminal charges well prior to filing criminal charges and arraigning a defendant.

119 D.A. Morrissey would fail to execute these duties which let to Sgt. Michael Kasprzak filing false criminal charges with Morrissey's blessing in an attempt to cover-up the Cheever's case and continuing conspiracy along with campaign of harassment of the Class.

120 Cheever's and other MCI Cedar Junction abuse their sick time more than any other Prison Guards and to circumvent using sick time Prison Guards claim false assaults by Prisoners because they get to go out on injury absence with full paid, i.e., tax free and doesn't count towards a guard's sick time which is a scam that was implemented after the blue ribbon panels probing the prison murder of former Pedophile Priest/Prisoner John Geoghan that concluded one of the mitigating factors to the homicide was guards misuse of sick time so the recommendations in regards to sick time use were implemented.

121 Defendant J. Rice will demonstrate he and the class have been dragged through the Prison Machine's Byzantine and Morrissey's arbitrary legal system.

122 Since D.A. Morrissey and/or his office had the video evidence of the fictitious assault and chose to violate the Constitution in vigorously prosecute/indict this case shows why he would late enters into an unholy alliance with Kasprzak and others to further frivolously prosecute as part of the continuing conspiracy of campaign of harassment in an attempt to coerce the Class into silence.

123 The Cheever Case and coerce tactics to force a guilty plea is the beginning of the continuing conspiracy campaign of harassment which the class will demonstrate has led to a snowball rolling down hill turning into a criminal unconstitutional avalanche spanning to the present date.

124 The Class is unsure if they can sue Cheever under RICO statute due to the statute of
limitations three year expiration has expired but the Cheever case is the root cause for all
the other Civil and Human Rights criminal violations set forth that are within the three year
statute of limitations.  The Class reserves the right to amend this complaint because the
Cheever false case gave birth to new conspiracies that are the subject of this complaint in
attempt to cover up the false Cheever case by the defendants, et al, whom the Class was
and still seeking an independent federal probe into.

**Part II**

This section outlines how Prison Guards biologically tortured Plaintiff J. Rice which is the Nazi Style Death Penalty System that took place during and after the Kasprzak and is the heart by the continuing conspiracy, i.e., campaign of harassment of the Class. Everything in this section took place at MCI Cedar Junction's DDU Punitive Segregation Unit and Prison Hospital Segregation Unit. The Class doesn't know if the individuals in this Section should be defendants under the RICO Statute or any other statute for the continuing conspiracy because if it weren't for their malfeasant actions the campaign of harassment is still ongoing to date. The Class reserves the right to amend this complaint. This is the First Section of Food used as punishment DNA samples are going to be needed from everyone named in this section to establish the death penalty system.

125 The statements listed below apply to Part II, VI and VIII in regards to the food samples, coffee samples, juice samples, medication samples, toilet paper samples, bed contaminations samples, toothpaste samples.

126 Plaintiff J. Rice can't outline all the food, juice, medication, coffee, toilet paper, toothpaste and other contaminations because his lodges and other drafts of this Class Action lawsuit has been seized by multiple defendants as set forth below so Plaintiff preserves the right to amend this complaint after Co-Plaintiffs B. Adams, P. Adams and B. Rice catalog all the samples.  The statute of limitation is about to expire on the Kasprzak false criminal case.

127 These biological Nazi Style torture known as the death penalty is the root cause for the conspiracy to bring a false criminal case by Def(s) Kasprzak, Morrissey, Doherty, Redd, Sr., and DeRusha.

128 Every prisoner's coffee and juice is poured directly in their presence other than Plaintiff J. Rice.

129 Every prisoner's bread doesn't come with either chemical agent and/or bodily fluids on it other than Plaintiff J. Rice who never ate the bread.

130 Every prisoner's eggs don't come inundated in liquid and/or water other than Plaintiff J. Rice.

131 When Plaintiff J. Rice states below that the food or medication left a cigarette aftertaste in his mouth means that the defendants, nurse, and/or Correctional Officer (CO) did place saliva of some CO, Nurse or Aryan Nation Prisoner who smokes cigarettes.  Note:  Cos have given cigarettes to Aryan Nation Prisoner in exchange for their bodily fluids to place in Plaintiff J. Rice's food.

132 When Plaintiff J. Rice states below that the food made his body shake, it's due to his food and medication being contaminated with chemical agent and/or other items.

133 When Plaintiff J. Rice states below that he swabbed the food, juice, coffee, toothpaste and/or medications, it means that he placed a large sample of the item on a piece of toilet paper and let it dry out. After the sample was cured, then he placed it in a wax bag and placed a label on it that states what it is, whom gave it out, the date and any personal notes.

134 When Plaintiff J. Rice states below he mailed the samples to either Co-Plaintiffs B. Adams, P. Adams and B. Rice, it means he did and B. Adams and P. Adams delivered all samples to B. Rice who has them in her freezer to preserve them and any biological material use to contaminate him and the samples need to be DNA and toxicologically tested.

135 Some of the individuals who biologically tortured aren't defendants due to the statute of limitation, but if it weren't for these malfeasant actions, then Plaintiff J. Rice wouldn't have been harassed by Def(s) Kasprzak, Redd, Sr., and DeRusha over the false Cheever charge which is why the biological torture commenced so Def(s) Morrissey and Doherty conspired with Def(s) Kasprzak, Redd, Sr., and DeRusha to falsely charge Plaintiff J. Rice for assaulting Def. Kasprzak. The Class is unsure if they can sue the other individuals under the RICO Statutes continuing conspiracy so the Class preserves the right to amend the Class-Action complaint.

136 The Defendants and other prison employees malfeasant actions are in clear violation of: (A) the U.S. Supreme Court where they held that the use of food as punishment against a prisoner is a form of physical torture in Schneckloth v. Bustamonte, 412 U.S.218 (1973) and (B) The First Circuit Court of Appeals held that the Mass. Gen. Laws Ch.127,§§39-40 forbids the use of food as punishment or require that segregated in mates receive the same meals as other prisoners.

137 The Defendants and other individuals will have to provide their DNA for DNA testing where the: (A) U.S. Supreme Court held "DNA testing [is an] unparalled ability both to exonerate

the wrongly convicted and to identify the guilty.  It has the potential to significantly improve...the criminal justice system."  <u>District Attorney's Office for Third Judical Dist. V. Osborne</u>, 557 U.S. 52, 55 (2009)and (B) The S.J.C. has held 3rd party DNA sample can be attained in <u>Jansen Petitioner,</u> 444 Mass. 112 (2005).

138 Sometime in 2008 or 2009, then Sgt. Michael Frattasio, CO Marc McGlynn and CO Adams Sperlich among others did place hallucinogens in Plaintiff J. Rice's food in an attempt to coerce a guilty plea in the Cheever's case.  Said Plaintiff mailed out food samples and his body hair to prove this fact because two days the said Plaintiff was hallucinating.  The samples were mailed to Co-Plaintiff B. Rice.[2]  This took place in DDU at MCI Cedar Junction.

139 Due to the use of food as punishment, it caused the Plaintiff J. Rice went on prolonged hunger strike resulting in him being transferred to Lemuel Shattuck Hospital where he informed Dr. Audrey A. Chan that his food was spiked with "hallucinogens and he has been packaging his food and sending it for analysis and processing to prove that his food was being tampered with" as Dr. Chan authors in her "Discharge Summary" of said Plaintiff.  (See <u>Exhibit No. 321</u>).

140 On or about June 18, 2009, CO Marc Glazebrook spit in Plaintiff J. Rice's mattress while on a hunger strike in MCI Cedar Junction Hospital Segregation Unit.  Plaintiff J. Rice swabbed the large wad of spit and mailed it to Co- Plaintiff B. Rice on or about June 25, 2009, from the Lemuel Shattuck Hospital.

141 On Dec. 24, 2008 or 2009, at approximately 11:30 PM, CO Ryan Burke did have a tube of blood allegedly belonging to Aryan Nation Prisoner Brendan McGinness and placed drops on Plaintiff J. Rice sneakers that were outside his MCI Cedar Junction Hospital Segregation Unit cell.  Plaintiff J. Rice mailed the sneakers to Co-Plaintiff B. Rice on or about Sept. 19, 2010.

---

[2] The Class will amend this complaint after Co-Plaintiffs B. Adams, P. Adams and B. Rice catalog the samples again so the dates and whom is known.

142 On Sept. 20, 2010, Plaintiff J. Rice wrote in his grievance from "In reprisal for speaking out about: ...how officers attempted to force me into pleading guilty to assaulting CO James Cheever in criminal court, my life sentence is attempting to be illegally enhanced into a death sentence via intentionally infecting me with an infectious disease positive bodily fluids." (See Exhibit No. 322).

143 On May 15, 2012 (A) at lunch, Lt. Robert Higgins gave Plaintiff J. Rice two ups of pre-poured juice which he called special rat juice so said Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on May 15, 2012.

144 On May 17, 2012 (A) at lunch, Lt. Robert Higgins gave Plaintiff J. Rice two cups of pre-poured juice which he called "special rat juice" so said Plaintiff swabbed it because something was floating in it and mailed the swab to Co-Plaintiff B. Rice on May 17, 2012.

145 On May 19, 2012 (A) at breakfast, Lt. Donald Dennomme had two cups of pre-poured coffee which he said to Plaintiff J. Rice "it has Aryan cream and sugar in it so drink it as is." There was something in juice so said Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on May 21, 2012.

146 On May 20, 2012 (A) at dinner, Lt. Joseph Mitchell gave Plaintiff J. Rice two cups of pre-poured juice which had odd smell so said Plaintiff swabbed it so Plaintiff mailed the swab to Co-Plaintiff B. Rice on May 21, 2012.

147 On May 30, 2012 at dinner, Lt. Joseph Mitchell gave Plaintiff J. Rice an apple with what appeared to be either bodily fluids and/or chemical agent on it so said Plaintiff swabbed it and mailed it to his Co-Plaintiff B. Rice. Also, they gave said Plaintiff two cups of pre-poured juice that were swabbed and mailed to Co-Plaintiff B. Rice on May 30, 2012.

148 On May 31, 2012 (A) at breakfast, Lt. Letta Sutton gave Plaintiff J. Rice two cups of pre-poured coffee which she claimed had bodily fluids inside it; (b) at lunch Lt. Robert Higgins

gave said Plaintiff Sloppy Joe that had an odd smell which he claimed had bodily fluids since inside it and Lt. Sutton gave said Plaintiff two cups of juice that she claimed to have spit in it. CO Sgt. Michael Kasprzak and Lt. Joseph Mitchell gave said Plaintiff two cups of pre-poured juice which they called "Aids Juice." Plaintiff swabbed all the food and beverages. Each swab was mailed to CO-Plaintiff B. Rice on June 1, 2012.

149 On June 1, 2012 at lunch, CO John Undiz gave Plaintiff J. Rice two cups of pre-poured juice which he called "Hepatitis and Aids juice for rat juice." Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on June 1, 2012.

150 On June 3, 2012 at breakfast, Plaintiff was given contaminated coffee by Lt. Robert Higgins, CO Brendan Donnelly and CO Adam Sperlich which they called "Aryan Coffee with cream." The coffee had something floating in it and had a foul odor so Plaintiff J. Rice swabbed it, then mailed it out to Co-Plaintiff B. Rice on June 3, 2012.

151 One June 3, 2011 at lunch, Plaintiff J. Rice was given contaminated chocolate pudding by Lt. Robert Higgins and CO Adams Sperlich who both said "Eat our Aryan Shit pudding" which pudding had a feces odor so said Plaintiff swabbed it then mailed it to Plaintiff B. Rice on June 3, 2012.

152 On June 3, 2012 at dinner, Plaintiff J. Rice was given contaminated gravy that had an odd smell which was swabbed, bread that had bodily fluids or chemical agent on it and a very foul odor and juice that had an add/foul odor. The gravy and juice was swabbed and bread was mailed to Co-Plaintff B. Rice on June 3, 2013. The food and juice was given to Plaintiff J. Rice by Lt. Joe Mitchell.

153 On June 4, 2012 at Lunch, Plaintiff J. Rice was given contaminated Pasta Salad and soup by CO William Nahim which had a foul odor that he called "Nigger rat food," coleslaw by CO Jason Bernard which he called Chicken Salad and juice by Lt. Robert Higgins which both had

a foul odor also.  The Pasta Salad, soup, coleslaw, chicken salad and juice were swabbed and mailed to Co-Plaintiff B. Rice on June 4, 2012.

154 On June 4, 2012 at dinner, Plaintiff J. Rice was contaminated with pre-poured cups of juice by Sgt. James DeMartino whom said "Enjoy my Italian man juice: which had a foul odor and something floating in it so it was swabbed, carrots which had a foul odor, bread which had either chemical agent or bodily fluids on it by Lt. Joe Mitchell when said "That's a Cheever's payback meal nigger."  The juice, carrots and bread slice were swabbed by Plaintiff J. Rice and mailed to Co-Plaintiff B. Rice on June 4, 2012.

155 On June 4, 2012, Plaintiff J. Rice was spitting up something due to the contamination of his food so he spit on a piece of toilet paper and after it dried, he mailed it to Co-Plaintiff B. Rice on June 4, 2012.

156 On June 5, 2012 at breakfast, Plaintiff J. Rice was given contaminated eggs which were extremely inundate with a foul odor and two cups of pre-poured coffee that had something floating in it by Lt. Robert Higgins and CO Jason Bernard who both said "Enjoy eating us." The eggs and coffee were swabbed by Plaintiff J. Rice and mailed to Co-Plaintiff B. Rice on June 5, 2012.

157 On June 5, 2012 at lunch, Plaintiff J. Rice was given two cups of contaminated pre-poured juice which had a foul odor by Lt. Robert Higgins who said "that's Cheever's eating rat."  The juice was swabbed by Plaintiff J. Rice and mailed out to Co-Plaintiff B. Rice on June 5, 2012.

158 On June 5, 2012 at dinner, Plaintiff J. Rice was given contaminated cottage potatoes which were inundated with liquid, bread that had either bodily fluids or chemical agent on it and two cups of pre-poured juice that had something floating in it by Lt. Joe Mitchell and CO Aaron Valla.  The cottage potatoes, bread and juice were swabbed and mailed to Co-Plaintiff B. Rice on June 5, 2015.

159 On June 6, 2012 at breakfast, Plaintiff J. Rice was given cereal that had something on it and two cups of coffee that had something floating in it by Lt. Robert Higgins which he called the cereal "Aryan Flakes." Flakes of the cereal with something on them were mailed to Co-Plaintiff B. Rice on June 6, 2012 by Co-Plaintiff J. Rice.

160 On June 6, 2012 at lunch, Plaintiff J. Rice was given contaminated hamburgers that had an extremely foul odor and two cups of pre-poured juice which had something floating in it by Lt. Robert Higgins. The hamburger and juice were swabbed by Plaintiff J. Rice and mailed to Co-Plaintiff B. Rice on June 6, 2012.

161 On June 6, 2012 at dinner, Plaintiff J. Rice was given contaminated bread that had something on it that Sgt. Michael Kasprzak claimed was "semen" Burritos that one was cut opened and two cups of pre-poured juice that had something floating inside it by Sgt. Kasprzak and Lt. Joe Mitchell who both called it a Cheever's death meal. Plaintiff J. Rice swabbed the cut opened burrito and juice then mailed the swabs and bread to Co-Plaintiff B. Rice on June 6, 2012.

162 On June 7, 2012 at lunch, Plaintiff J. Rice was given contaminated pasta salad which had an odor by Lt. Robert Higgins who said "good luck with eating that one" and two cups of pre-poured juice that had something floating in it. Plaintiff Rice swabbed the pasta salad and juice and mailed the swab to Co-Plaintiff B. Rice on June 7, 2012.

163 On June 7, 2012, Plaintiff J. Rice was spitting up something due to the contamination of his food so he spit on a piece of toilet paper and after it dried he mailed it to Co-Plaintiff B. Rice on June 7, 2012.

164 On June 7, 2012 at dinner, Plaintiff J. Rice was given contaminated bread that had either bodily fluids or chemical agent on it which Lt. Joe Mitchell called it was "Aryan CoCo Bread"

with two cups of pre-poured juice that had something floating in it. Plaintiff swabbed juice and mailed the swab with the bread to Co-Plaintiff B. Rice on June 7, 2102.

165 On June 10, 2012 at lunch, Plaintiff J. Rice was given contaminated Chop Suey which had a very foul odor and two cups of pre-poured juice that something floating in it by Lt. Robert Higgins who said "Every day you pay for Cheever's case being dismissed." Plaintiff J. Rice swabbed the Chop Suey and juice which was mailed to Co-Plaintiff B. Rice on June 10, 2012.

166 On June 10, 2012 at dinner, Plaintiff J. Rice was given contaminated two cups of pre-poured juice by Lt. Joe Mitchell. Plaintiff swabbed the juice because something was floating in it and mailed the swab the Co-Plaintiff B. Rice on June 10, 2012.

167 On June 11, 2012 at breakfast, Plaintiff J. Rice was given two cups of contaminated pre-poured coffee by Lt. Robert Higgins who said "Drink Aryan Coffee rat." Something was floating in the coffee. Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on June 11, 2012.

168 On June 11, 2012 at dinner, Plaintiff J. Rice was given two cups of contaminated pre-poured juice that had something floating in it by Lt. Joe Mitchell. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on June 11, 2012.

169 On June 12, 2012 at breakfast, Plaintiff J. Rice was given two cups of contaminated pre-poured coffee by CO Blas Nunez which he called "Rican Coffee" that had something floating in it. Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on June 12, 2012.

170 On June 19, 2012 at lunch, Plaintiff J. Rice was given contaminated Pasta Salad by Lt. Donald Denomme that had something Black in it. Plaintiff swabbed the food and mailed the swab to Co-Defendant B. Rice on June 19, 2012.

171 On June 24, 2012 at dinner, Plaintiff J. Rice was given contaminated juice that had something floating in it by Lt. Patrick Morrissey said "Enjoy the spit Aryan juice" so said Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on June 25, 2012. This is the same Lt. Patrick Morrissey who was fired for repeatedly being arrested for drunk driving.

172 On June 25, 2012 at breakfast, Plaintiff j. Rice was giver contaminated syrup by Lt. James Redd and CO Marc McGlynn which they claimed to have spit in. Plaintiff swabbed the syrup and mailed the swab to Co-Plaintiff B. Rice on June 26, 2012.

173 On June 25, 2012 at lunch, Plaintiff J. Rice was given contaminated juice which had something floating in it by Lt. James Redd and CO William Figueroa. Said Plaintiff swabbed the juice and mailed it to Co-Plaintiff B. Rice on June 26, 2012.

174 On June 26, 2012 at breakfast, Plaintiff J. Rice was given contaminated cups of coffee by Lt. James Redd and CO Marc McGlynn who said "Enjoy the coffee with Aryan cream in it." Something was floating in the coffee so said Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on June 27, 2017.

175 On November 13, 2012 at dinner, Plaintiff J. Rice was given contaminated bread by Lt. James Redd and Sgt. Michael Kasprzak who both fluids and/or chemical agent on the bread so said Plaintiff mailed the bread to Co-Plaintiff B. Rice on November 14, 2012.

176 On November 15, 2012 at dinner, Plaintiff J. Rice was given contaminated bread by Lt. Arthur DaSilva and Sgt. Mike Kasprzak who said "Enjoy the death meal." There were either bodily fluids and/or chemical agent on the bread so said Plaintiff mailed the bread to Co-Plaintiff B. Rice on November 16, 2012.

177 On November 17, 2012 at dinner, Plaintiff J. Rice was given contaminated chicken by Sgt. Michael Kasprzak who said "It's a death meal. Don't eat or drink it." Also, Kasprzak and Lt. Donald Denomme gave said Plaintiff bread with either bodily fluids and/or chemical agent

on it.  Said Plaintiff swabbed the chicken and mailed it with a slice of bread to Co-Plaintiff B. Rice on November 19, 2012.

178 On November 18, 2012 at dinner, Plaintiff J. Rice was given contaminated bread by Lt. George Billadeau and CO Peter Diagle.  Bread had either bodily fluids and/or chemical agent on it so said Plaintiff mailed the bread to Co-Plaintiff B. Rice on November 19, 2012.

179 On November 19, 2012 at dinner, Plaintiff J. Rice was given contaminated sauce and soup by Lt. Harold Wilkes and CO Chris Carroll who said "You will shake after eating that" so Plaintiff swabbed both items.  Then mailed the swabs to Co-Plaintiff B. Rice. On November 2012.

180 On November 19, 2012 at dinner, Plaintiff J. Rice was given contaminated Chicken Stew which had an odd smell and two cups of pre-poured juice that had something floating in it by Lt. James Redd which Plaintiff J. Rice swabbed and mailed to Co-Plaintiff B. Rice on November 19, 2012.

181 On November 20, 2012 at breakfast, Plaintiff J. Rice was given two cups of contaminated pre-poured coffee by Lt. John Dean who said "Drink a friend."  There was a something floating in the coffee.  Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on November 21, 2012.

182 On November 20, 2012 at lunch, Plaintiff J. Rice was given contaminated Chop Suey which had a very foul odor by Lt. John Dean who said "Enjoy it."  Plaintiff swabbed the food and mailed the swab to Co-Plaintiff B. Rice on November 21, 2012.

183 On November 20, 2012 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. James Redd.  Juice had something floating in it which Sgt. Michael Kasprzak called a "Death Meal" and further said "Don't eat or drink."

184 On November 23, 2012 at dinner, Plaintiff J. Rice was given contaminated cups of pre-poured juice by Lt. George Billadeau, Sgt. Michael Kasprzak and CO Pierce McGuire who said

"Enjoy your death meal."  Juice had something floating in it.  Said Plaintiff swabbed the juice

and mailed the swab to Co-Plaintiff B. Rice on November 24, 2012.

185 On November 24, 2012 at dinner, Plaintiff J. Rice was given contaminated cups of pre-

poured juice by Lt. George Billadeau and CO Kinsman which they that every guard in DDU

has their DNA in Plaintiff's food.  The CO McGuire said "my DNA is in it."  Something was

floating in the juice so said Plaintiff B. Rice on November 25, 2012.  Plaintiff J. Rice

mistakenly believed McGuire's first name was Daniel but it is Pierce.  Also, Lt. George

Billadeau was fired for murdering Prisoner Joshua Messier at Bridgewater State Hospital.

186 On November 25, 2012 at dinner, Plaintiff J. Rice was given contaminated cups of pre-

poured juice by Lt. George Billadeau and CO Pierce McGuire who said "Enjoy the sugar.

You're getting married to Peoples disease." Please note, Peoples is the nickname for

Prisoner Samuel Gutierrez.  The juice had something floating in it so said Plaintiff swabbed

the juice and mailed it to Co-Plaintiff B. Rice on November 26, 2012.  Also, they gave said

Plaintiff pasta with chicken and soup which both had a very foul smell so it was swabbed

and mailed to said Co-Plaintiff with juice swab.

187 On November 26, 2012 at lunch, Plaintiff J. Rice was given contaminated soup and pre-

poured cups of juice that both food items had something floating in them so said Plaintiff

swabbed both items and mailed the swabs to Co-Plaintiff B. Rice on November 27, 2012.

188 On November 29, 2012 at breakfast, Plaintiff J. Rice was given contaminated pre-poured

cups of coffee by Lt. Harold Wilkes who called it a "special breakfast" with Sgt. Kevin

Flanagan, CO Ryan Paulhus and CO Gemelli.  Something was floating in the coffee so said

Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on November 30, 2012.

189 On November 29, 2012 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of

juice by Lt. Harold Wilkes who called it an "Extra Special Lunch" with CO Ryan Paulhus and

CO Gemelli.  Something was floating in the juice so said Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on November 30, 2012.

190 On November 29, 2012 at dinner, Plaintiff J. Rice was given contaminated mash potatoes with gravy that had something in it with a foul odor and pre-poured cups of juice by Lt. George Billadeau and Sgt. Michael Kasprzak who said "Enjoy your Lungies."  There was a long hair in the gravy that was swabbed with gravy and mash potatoes.  There was something floating in the juice which was swabbed.  The swabs were mailed to Co-Plaintiff B. Rice on November 30, 2012.

191 On November 30, 2012 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee and syrup that both had something floating in it by Lt. Donald Denomme and CO Donald Moore who with said Plaintiff swabbed the food items and mailed them the Co-Plaintiff B. Rice on December 3, 2012.

192 On November 30, 2012 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Donald Denomme and CO Matthew Burnieika claimed "bodily fluids in the food and juice."  Something was floating in the juice so said Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice and on December 3, 2012.

193 On December 3, 2012 at dinner, Plaintiff J. Rice was given contaminated Mac and Cheese by Lt. James Redd and CO John DeRusha who claimed to have tampered with the food.  The food had a foul odor and something white in it so said Plaintiff swabbed the said food and mailed it to Co-Plaintiff B. Rice on December 4, 2012.

194 On December 4, 2012 at breakfast, Plaintiff J. Rice was given to cups of contaminated pre-poured of coffee by Lt. John Dean who verbally commented that it was tampered with "something floating in the coffee."  Plaintiff swabbed the coffee and mailed it to Co-Plaintiff B. Rice on December 5, 2012.

195 On December 4, 2012 at lunch, Plaintiff J. Rice was given two cups of contaminated pre-poured juice which had something floating in it by Lt. John Dean and Sgt. William Wahim who both verbally claimed to have contaminated the juice.  They also gave said Plaintiff Rice, Baked Beans and Salsa which had a very foul odor with something in it so the juice, rice, baked beans and salsa was swabbed and mailed to Co-Plaintiff B. Rice on December 5, 2102.

196 On December 4m 2012 at dinner, Plaintiff J. Rice was given two cups of contaminated pre-poured juice which had something floating inside it, an apple which had something on it by Sgt. Michael Kasprzak who said "Jordan don't eat your dinner" and Lt. James Redd made a spitting sound.  Plaintiff swabbed the juice and apple which he mailed the swabs to Co-Plaintiff B. Rice on December 5, 2012.

197 On December 5, 2012 at lunch, Plaintiff J. Rice was given two cups of contaminated pre-poured juice that had something floating in it by CO Joe Dove and Lt. Harold Wilkes who both said "Enjoy."  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 5, 2012.

198 On December 5, 2012 at dinner, Plaintiff J. Rice was given two cups of contaminated juice which had something floating inside it, an apple which had something on it by Sgt. Michael Kasprzak, Lt. James Redd and CO John DeRusha who called it a "Death Meal."  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 5, 2012.

199 On December 28, 2012 at dinner, Plaintiff J. Rice was given contaminated Rice and Chicken Stew which had a foul odor, two cups of pre-poured juice which had something floating in it and bread that had either bodily fluids or chemical agent on it by Sgt. Michael Kasprzak. Rice, chicken stew and juice were swabbed and mailed with the piece of bread to Co-Plaintiff B. Rice on December 30, 2012 by Plaintiff J. rice.

200 On December 31, 2012 at breakfast, Plaintiff J. Rice was given contaminated syrup which was watery and had an odd smell by Lt. John Dean and CO Mello who said "Eat our friend's syrup." Plaintiff swabbed the syrup and mailed the swab to Co-Plaintiff B. Rice on January 2, 2013.

201 On December 31, 2012 at lunch, Plaintiff J. Rice was given contaminated soup, which had something floating in it by Lt. John Dean who said "That's my Nubian soup special for making us Black Men bad by beating us in court." Plaintiff swabbed the soup and mailed the swab to Co-Plaintiff B. Rice on January 2, 2013.

202 On December 31, 2012 at dinner, Plaintiff J. Rice was given contaminated Chicken Stew which had a foul odor by CO William Perkins who said "Rat Stew Food. It will make you trip again. "The Plaintiff swabbed the said stew and mailed the swab to Co-Plaintiff B. Rice on January 2, 2013.

203 On January 1, 2013 at lunch, Plaintiff J. Rice was given contaminated Pasta Sauce which had a very foul odor by Lt. Donald Denomme and CO Matthew Burnieika who both said "Eat our iron, lead, spit, shit and scum," Plaintiff swabbed the said sauce and mailed the swab to Co-Plaintiff B. Rice on January 2, 2013.

204 On January 2, 2013 at dinner, Plaintiff J. Rice was given contaminated bread which had either bodily fluids or a chemical agent on it, rice with beef stew that had been all mixed together by Sgt. Michael Kasprzak who said "Eat that death meal." Plaintiff swabbed the rice with beef and mailed the swab with bread slice to Co-Plaintiff B. Rice on January 2, 2013.

205 On January 4, 2013 at lunch, Plaintiff J. Rice was given contaminated cups of pre-poured juice by Lt. Donald Denomme who said "Enjoy hat Juice Rice." There was something floating in the juice and the beans by Lt. John Dean which had something white in them that had a

foul odor.  Plaintiff swabbed the juice and bean.  The swabs were mailed to Co-Plaintiff B. Rice on January 4, 2013.

206 On January 4, 2013 at dinner, Plaintiff J. Rice was given contaminated Choy Suey which had something white in it that had a foul odor by Lt. George Billadeau and Sgt. Tujudeen Yussif who the latter said "We are killing Rice with food."  Plaintiff swabbed the food and mailed it to Co-Plaintiff B. Rice on January 4, 2013.

207 On January 6, 2013 at dinner, Plaintiff J. Rice was given two contaminated cups of pre-poured juice which had something floating it by CO Dube, and an apple, which had something white on it that was either chemical agent and/or bodily fluids, by CO Bishop who said "Enjoy that candy apple."  Plaintiff swabbed juice and apple then mailed the swab to Co-Plaintiff B. Rice on January 7, 2013.

208 On January 7, 2013 at lunch, Plaintiff J. Rice was given contaminated cups of pre-poured juice that had something floating in it by CO Matthew Burnieika who said "Drink my scum juice" and pasta salad which had a very foul odor by Lt. John Dean.  Plaintiff swabbed each food and mailed the swab to Co-Plaintiff B. Rice on January 7, 2013.

209 On January 13, 2013 at dinner, Plaintiff J. Rice was given contaminated cups of juice that had something floating in it and potatoes that were inundated in liquid by Lt. James Redd and Sgt. Michael Kasprzak who said "It's death meal and don't eat or die."  Plaintiff swabbed each food item and mailed the swabs to Co-Plaintiff B. Rice on January 14, 2013.

210 On January 13, 2013 at breakfast, Plaintiff J. Rice was given contaminated Eggs which were extremely inundated in liquid by Lt. John Dean who said "Eat our Man eggs" and CO Webster found it funny.  Plaintiff swabbed the eggs and mailed the swab to Co-Plaintiff B. Rice on January 14, 2013.

211 On January 15, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by Lt. John Dean who said "There is man cream in it so only add sugar boy" and CO Webster found it funny.  Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on January 13, 2013.

212 On January 15, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Lt. Harold Wilkes who said "Drink that special rat juice" and CO Jason Bernard said "I made it special for you."  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on January 16, 2013.

213 On January 16, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it, bean that had an odd smell and bread that had something all over it, i.e., either bodily fluids and/or chemical agent by Lt. James Redd and Sgt. Michael Kasprzak who said "Don't forget to feed Rice Aids, Hepatitis, Iron and other diseases.  I did it!"  Plaintiff swabbed the beverage and food and mailed each swab to CO-Plaintiff B. Rice on January 17, 2013.

214 On January 17, 2013 after Plaintiff J. Rice was very ill after eating and spit up blood so be swabbed.  Also he cut himself for a blood sample to test his blood so he swabbed the cut and mailed the swabs to Co-Plaintiff B. Rice on January 17, 2013.

215 On January 17, 2013 at lunch, Plaintiff J. Rice was given contaminated Sloppy Joe that had a foul odor by CO Chris Carroll who said "It's Sloppy Irish Scum Jue," pre-poured cups of juice that had something floating in it by Lt. Donald Denomme who said "Drink my babies."  Plaintiff swabbed the food and mailed the swab to Co-Plaintiff B. Rice on January 18, 2013.

216 On January 17, 2013, Plaintiff J. Rice body was shaking so he cut himself and put blood drops on a piece of toilet paper for testing which later that night Plaintiff J. Rice mailed the blood swab to Co-Plaintiff B. Rice.

217 On January 17, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. James Redd, Sgt. Ciampi and Sgt. Michael Kasprzak who call claimed to have placed their bodily fluids inside the juice, bread which had either bodily fluids and/or chemical agent on it by Sgt. Kasprzak who called it "White dick bread." Plaintiff swabbed the juice and mailed the swab with bread to Co-Plaintiff B. Rice on January 18, 2013.

218 On January 17, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating inside it by Lt. Donald Denomme who said "Don't drink the coffee." Plaintiff swabbed the coffee and mailed the swab Co-Plaintiff B. Rice on January 18, 2013.

219 On January 18, 2013 at breakfast, Plaintiff J. Rice  was given contaminated pre-poured cups of coffee by Lt. Donald Denomme and CO Ashley Silva who said "I put my sweet Portuguese pussy juice inside your coffee so enjoy it nigger rat" which Lt. Denomme found funny.  The coffee was swabbed by said Plaintiff mailed it to Co-Plaintiff B. Rice on January 21, 2013.

220 On January 21, 2013 at dinner, Plaintiff J. Rice was given contaminated cups of prepoured juice by Lt. James Redd who said "See that in the juice that's me."  There was something floating in the juice so said Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on January 22, 2013.

221 On January 24, 2013 at breakfast, Plaintiff J. Rice was given contaminated grits by Lt. Donald Denomme and CO David Moore who both called it "Transfer food."  The grits had a foul odor so said Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on January 25, 2013.

222 On January 24, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Donald Denomme.  There was something Black in the juice so said Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on January 25, 2013.

223 On January 24, 2013 at dinner, Plaintiff J. Rice was given contaminated bread by Lt. James Redd. The bread had either bodily fluids and/or chemical agent on it so said Plaintiff mailed the bread to Co-Plaintiff B. Rice on January 24, 2013.

224 On January 24, 2013 at dinner, Plaintiff J. Rice was given contaminated rice and stir fry that was all mixed together when it doesn't come like that by Lt. James Redd who said "That's Aryan Stir Fry with special sauce in it." The food had a foul odor so Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on January 2013.

225 On January 25, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. Donald Denomme and CO David Moore who said "Enjoy drinking was and eating our trash food." They also gave the said Plaintiff grits which had a foul odor that they called "Transfer food." The coffee and grits was swabbed and mailed to Co-Plaintiff B. Rice on January 25, 2013.

226 On January 25, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Letta Sutton and CO Matthew Burnieika. Also, they gave the Plaintiff baked beans that were watery with an odor. Plaintiff swabbed the juice and beans and mailed the swab to Co-Plaintiff B. Rice on January 28, 2013.

227 On January 25, 2013 at dinner, Plaintiff J. Rice was given contaminated Chop Suey which had an odor smell and pre-poured cups of juice that had something floating in it by Lt. George Billadeau and Sgt. Chris Ciampi. Both food items were swabbed and mailed to Co-Plaintiff B. Rice on January 28, 2013. Also, they gave said Plaintiff bread that had either bodily fluids and/or chemical agents on it. The bread slice was mailed to Plaintiff B. Rice on January 28, 2013.

228 On January 26, 2013 at dinner, Plaintiff J. Rice was given contaminated bread with either bodily fluids or chemical agent on it by Lt. George Billadeau and CO Peter Diagle who said "Enjoy your

death meal." They also gave said Plaintiff juice which had something floating in it. The juice was swabbed. The swab and slice of bread was mailed to Co-Plaintiff B. Rice on January 27, 2013.

229 On January 26, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Donald Denomme and CO David Moore which the juice had something floating in it so Plaintiff swabbed it and mailed to Co-Plaintiff B. Rice on January 27, 2013.

230 On January 26, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. Donald Denomme which the coffee had something floating in it. The coffee was swabbed and mailed to Co-Plaintiff B. Rice on January 27, 2013.

231 On January 27, 2013 at breakfast, Plaintiff J. Rice was given contaminated pancake syrup and pre-poured cups of coffee by Lt. John Dean, Sgt. James Wilder, CO Adams and CO Webster who all verbally called it "a bodily fluid breakfast." Both food items had something floating in it so said Plaintiff swabbed them and mailed each swab to Co-Plaintiff B. Rice on January 28, 2013.

232 On January 27, 2013 at lunch, Plaintiff J. Rice was given contaminated Chili by Lt. John Dean, Sgt. James Wilder, CO Chris Carroll and CO Webster in which they all claimed had "feces" in it by them. The Chili had a feces odor so Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on January 28, 2013. Also, they gave said Plaintiff pre-poured juice that they claimed had "feces" in it so it too swabbed and mailed to said Co-Plaintiff on same date.

233 On January 27, 2013 at dinner, Plaintiff J. Rice was given contaminated gravy and mash potatoes that had a foul odor and had been mixed altogether by Lt. James Redd and Sgt. Chris Dracone. Also, they gave Plaintiff bread with either bodily fluids and/or chemical agent on it and pre-poured cups of juice that had something floating in it. All food items were swabbed and mailed to Co-Plaintiff B. Rice on January 28, 2013.

234 On January 26, 2013 at dinner, Plaintiff J. Rice was given contaminated chicken, potatoes and veggies by Lt. George Billadeau which food items had a very fool odor so said Plaintiff swabbed each food item and mailed them to Co-Plaintiff B. Rice on January 27, 2013.

235 On January 28, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee which had something floating in it by Lt. John Dean, CO Glen LaRoach, CO William Nahim, CO Matthew Burnieika and CO George who all said "Enjoy our fluid coffee" so Plaintiff made several swabs and mailed them to Co-Plaintiff B. Rice on January 28, 2013.

236 On November 29. 2013 at lunch, Plaintiff J. Rice was given contaminated Baked Beans by CO Brian Leavitt. Beans looked like something was in them. Plaintiff was given pre-poured cups of juice by CO Steve Fagan. The juice had something floating in it too. Plaintiff swabbed the Baked Beans and juice and mailed the swabs to Co-Plaintiff B. Rice on November 30, 2013.

237 On November 29, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Michael Luntok. The juice had something floating in it. Plaintiff swabbed the juice and mailed to Co-Plaintiff B. Rice on November 30, 2013.

238 On November 30, 2013 at breakfast, Plaintiff J. Rice was given contaminated prepoured cups of coffee by CO Ashraff Gomma. Coffee had something floating in it so Plaintiff swabbed and mailed the swab to Co-Plaintiff B. Rice on November 30, 2013.

239 On March 13, 2013 at dinner, Plaintiff J. Rice was given contaminated Spaghetti and sauce by Lt. James Redd and Sgt. Michael Kasprzak which they had mixed altogether and had a foul odor so Plaintiff swabbed both food items and mailed swabs to Co-Plaintiff B. Rice on March 14, 2013.

240 On March 23, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice with a huge "loogie" wad of spit in it as set forth parage No. _____ (Page No. 102) and Potatoes by Redd, Kasprzak, Riley, Diagle, DaSilva and Sleeper. Again the food items were swabbed and mailed to Co-Plaintiff B. Rice on March 25, 2013.

241 On February 10, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by Lt. John Dean and CO Reynolds but Sgt. James Wilder and CO Adams Sperlich verbally claimed bodily fluids were in the coffee. Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on February 11, 2013.

242 On February 11, 2013 at breakfast, Plaintiff J. Rice was given contaminated cups of coffee that had something floating in it and syrup was watery with an odd smell by Lt. John Dean and CO McCoy. Said Plaintiff swabbed the coffee and syrup which was mailed to Co-Plaintiff B. Rice on February 11, 2013.

243 On February 11. 2013 at lunch, Plaintiff J. Rice was given contaminated soup, sauce and cups of pre-poured juice that had something floating in it. The soup and sauce had an odd smell. Food was given by Lt. John Dean and CO Lea Marchand. Plaintiff swabbed the food and juice and mailed the swabs to Co-Plaintiff B. Rice on February 11, 2013.

244 On February 11, 2013 at dinner, Plaintiff J. Rice was given contaminated Chicken Stew and Rice that had an odd smell and cups of pre-poured juice that had something floating in it by Lt. James Redd and CO William Perkins. Plaintiff swabbed the food and juice and mailed each swab to Co-Plaintiff B. Rice on February 11, 2013.

245 On March 27, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. Harold Wilkes. The coffee has something floating inside it so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on March 27, 2013.

246 On March 27, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it and Pasta salad that was inundated in liquid by Lt. Harold Wilkes and CO Mario Belini. The Plaintiff swabbed both food items and mailed to Co-Plaintiff B. Rice on March 28, 2013.

247 On April 9, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it. The coffee was given to Plaintiff by Lt. James Redd and CO Brendan Donnelly so Plaintiff swabbed coffee and mailed it to Co-Plaintiff B. Rice on April 9, 2013.

248 On April 13, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. John Dean and CO McCoy. Coffee had something floating in it so Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on April 15, 2013.

249 On April 18, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. Letta Sutton. Coffee had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 18, 2013.

250 On April 19, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. John Dean and CO McCoy. The juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 19, 2013.

251 On April 19, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Arthur DaSilva and CO Pierce McGuire. The juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 19, 2013.

252 On April 20, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. John Dean and CO James Redd (son of Lt. James Redd). Coffee had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 22, 2103.

253 On April 20, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. John Dean and CO Ryan Paulhu. Juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 22, 2013.

254 On April 20, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 22, 2013.

255 On April 21, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. John Dean. The coffee had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 22, 2013.

256 On April 21, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. John Dean and CO Adams Sperlich. The juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 22, 3013.

257 On April 21, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Harold Wilkes. The juice had something floating in it so Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on April 22, 2013.

258 On April 22, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. John Dean and CO/Matthew Burnieika. The coffee had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on April 22, 2013.

259 On April 22, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. John Dean and CO George along with soup. Both food items had something floating inside them and an odd smell so Plaintiff swabbed them and mailed the swabs to Co-Plaintiff B. Rice on April 30, 2013. They gave Plaintiff J. Rice Pasta Salad that had an add look and smell that was swabbed and mailed the swabs to Co-Plaintiff B. Rice.

260 On May 6, 2013 at dinner, Plaintiff J. Rice was given contaminated bread by Lt. James Redd and CO John DeRusha. Bread had either bodily fluids and/or chemical agent all on it. Plaintiff mailed a slice of bread to Co-Plaintiff B. Rice on May 6, 2013.

261 On May 18, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Lt. John Dean and CO James Lodico. The coffee had something floating in it so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on May 20 2013.

262 On May 18, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. John Dean and Sgt. Derrick Samuels. The juice had something floating in it so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on May 20, 2013.

263 On May 18, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Patrick Barrett and Sgt. Chris Ciampa. The juice had something floating in it so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on May 20, 2013.

264 On May 19, 2013 at breakfast, Plaintiff J. rice was given contaminated pre-poured cups of juice by Lt. Harold Wilkes and CO Adam Sperlich. The coffee had something floating in it so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on May 20, 2013.

265 On May 19, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. Harold Wilkes and Sgt. William Nahim. The juice had something floating in it so Plaintiff swabbed the juice and mailed swab to Co-Plaintiff B. Rice on May 20, 2013.

266 On May 19, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. James Redd. The juice had something floating in it so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on May 20, 2013.

267 On May 20, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it and eggs that were extremely wet by Lt. John Dean and CO George. Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on May 20, 2013.

268 On May 24, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it and Potatoes that were kind of wet by Lt. Harold Wilkes and CO

Jason Bernard. Both foods items were swabbed and the swabs mailed to Co-Plaintiff B. Rice on May 24, 2013.

269 On May 24, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by Lt. George Billadeau and Sgt. Chris Ciampa. The juice had something floating in it so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on May 24, 2013.

TOOTHPASTE CONTAMINATION

270 On November 17, 2012, while Plaintiff J. Rice was in the shower, CO Pierce McGuire did enter said Plaintiff's cell where he took a full tube of toothpaste that was 98% full and removed it where it was now 50% which he could've placed something in it. Because as escorting Plaintiff back to his cell CO McGuire "claimed to have contaminated the toothpaste. Plaintiff put a huge amount of toothpaste on a piece of toilet paper and mailed the toothpaste swab to Co-Plaintiff B. Adams on November 19, 2012.

271 On January 16, 2013, CO Phillip Vieros gave Plaintiff his canteen including a brand new tube of toothpaste that had been opened which he claimed was contaminated with Hepatitis and HIV bodily fluids. Plaintiff put a huge amount of toothpaste on a piece of toilet paper and mailed the toothpaste swab to Co-Plaintiff B. Rice on January 17, 2013.

272 Due to the Plaintiff not being allowed to brush his teeth with non-contaminated toothpaste, he has developed cavities, gingivitis, plaque, tartar and bad breath.

TOILET PAPER CONTAMINATION

273 On May 26 or 27, 2012, CO Marc McGlynn did give Plaintiff J. Rice with toilet paper that was possibly contaminated with bodily fluids and/or chemical agent on it. Plaintiff J. Rice did place the contaminated toilet paper in a wax bag and mailed it to Co-Plaintiff B. Rice on May 28, 2012.

## BED LINEN CONTAMINATION

274 On January 1, 2013 while Plaintiff J. Rice was in the shower, Sgt. Michael Kasprzak did enter said Plaintiff's cell throwing some white stuff on said Plaintiff Bed Linen. Said Plaintiff put the white stuff in a wax bag and mailed it to Co-Plaintiff B. Rice on January 2, 2013.

## CONTAMINATED MEDICATION

275 On May 20, 0212, LPN Ashleigh Martin did open, Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water. Plaintiff J. Rice swabbed the medicine water swab and mailed the swab to Co-Plaintiff B. Rice on May 21, 2012.

276 On May 31, 2012, LPN Ashleigh Martin did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water. Plaintiff J. Rice swabbed the medicine water and mailed the swab to Co-Plaintiff B. Rice on June 1, 2012. On May 20 and 31, 2012, the medication in water did cause Plaintiff J. Rice's body to shake and left both a cigarette and chemical agent aftertaste in Plaintiff J. Rice's mouth.

277 On June 5 and 6, 2012, LPN Ashleigh Martin did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette taste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on June 7, 2012.

278 On June 12, 2012, LPN Katie Courtemanche did open Plaintiff J. Rice's Benadryl capsule and placed it in a pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on June 13, 2012.

279 On June 24, 2012, LPN Ashleigh Martin did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a

chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on June 26, 2012.

280 On January 14, 2013, RN Marianne Dolan did open Plaintiff J. Rice's Benadryl capsule and placed it in poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice January 15, 2013.

281 On January 25, 2013, RN Jennifer DosSantos did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on January 28, 2013.

282 On January 26, 2013, Nurse Mike (whose last name is unknown but he is a white male) did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on January 28, 2013.

283 On January 27, 2013, RN Marianne Dolan did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swab and the medication in water and mailed the swab to Co-Plaintiff B. Rice on January 28, 2013.

284 On February 11, 2013, RN Marianne Dolan did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contamination water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on February 12, 2013.

285 On March 23, 2013, Nurse Andrea (her last name is unknown but she is a white woman with a Southern accent) did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on March 25, 2013.

286 On April 20, 2013, Nurse Mike (his last name is unknown but he is a white male) did open Plaintiff J. Rice's Benadryl capsule and place in it pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on April 22, 2013.

287 On April 21, 2013, RN Marianne Dolan did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that she called "cigarette spit meds for beating the Cheever's case" which made said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on April 22, 2013.

288 On May 17, 2013, Nurse Andrea (last name unknown but she is a white woman and has a Southern accent) did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on May 20, 2103.

289 On May 19, 2013, Nurse Mike (last name unknown but he is a white male) did open Plaintiff J. Rice's Benadryl capsule and placed it in pre-poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and a cigarette aftertaste in his mouth

so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on May 20, 2013.

290 On May 24, 2013, RN Marianne Doland did open Plaintiff J. Rice's Benadryl capsule and placed it in poured contaminated water that caused said Plaintiff's body to shake and left both a chemical agent and cigarette aftertaste in his mouth so said Plaintiff swabbed the medication in water and mailed the swab to Co-Plaintiff B. Rice on May 27, 2013.

291 Please note, RN stands for Registered Nurse and LPN stands Licensed Practical Nurse.

PART III


This section is how Def. Kasprzak and others engaged in the ongoing continuing conspiracy, i.e., campaign of harassment of Plaintiff J. Rice in attempt to silence him in regards to speaking out how the Nazi Style Death penalty system was employed against in reprisal of the Cheever's case being dismissed. These civil and Human Rights Violations took place at MCI Cedar Junction and Souza-Baranowski Correctional Center.  The class reserves the right to amend this complaint.

Defendant Kasprzak Put Hit on Plaintiff

291 On December 2, 2010, Plaintiff J. Rice was at a Souza-Baranowski Correctional Center (SBCC) in the Hospital Segregation Unit (HSU) for Hunger striking at MCI Cedar Junction due to the above outlined use of food as punishment when Def. Kasprzak called SBCC Sergeant (Sgt.) Peter Peladeau.

292 In real time as Def. Kasprzak spoke with Peladeau, the following message was verbally related to Plaintiff J. Rice by Peladeau from Kasprzak, i.e., "Kasprzak said He's been fucking with your food because you're a nigger rate who refused to plead guilty to our court cases and asked the Judge to call the Boston FBI Office so you could rat us out. He will kill you when you go back to Walpole."

293 Phone records will prove this phone call took place on December 2, 2010 sometime between 3 PM and 10 PM.

Seizure of Personal and Legal Properties

295 On August 2, 7, 14 and 30, 2012, Def. Kasprzak did bring a property moving cart to Plaintiff J. Rice's cell in DDU at MCI Cedar Junction where he seized all his property to move to fluoroscope which required the property being moved off the tier to a room that the fluoroscope machine was in.

296 On each date listed below, Def. Kasprzak did (A) rip, destroy and seize legal documents including lawsuits that Plaintiff J. Rice was drafting in regards to the biological torture of him by Def. Kasprzak and other rogue prison guards; (B) place infectious disease bodily fluids on Plaintiff clothes, toothbrush, toothpaste and bed linen which led to Plaintiff not being able to brush his

teeth for months and not being able to sleep on his bed linen. Def. Kasprzak malfeasant actions are captured on institutional video (See Exhibit No 1).

297 On Sept. 8, 2012, Def. Kasprzak did direct Joshua L. Riley, James R. DeMartino, and Daniel J. McGuire to seize Plaintiff J. Rise personal and legal properties to fluoroscope where they seized legal documents including a lawsuit that was in regard to the prison biological torture of me, personal pictures and contaminated by bed linen with bodily fluids (See Exhibit No. 2).

298 Plaintiff J. Rice was the only Prisoner whose property was removed from his cell to be fluoroscoped every day he was out of his cell for a shower. There was no legitimate prison security grounds because at no time was there any type of contraband located in my cell.

299 Instead, these malfeasant actions were to seize any legal documents in regards to the biological torture in reprisal of the Cheever's case and to seized food/DNA samples that prove the torture beyond any doubt.

MAIL CENSORING

300 Prison Officials have willfully and blatantly censored Plaintiff J. Rice's incoming and outgoing articles of both legal and personal mail to stop the outside world from learning the biological torture in regards of Plaintiff J. Rice refusing to plead guilty to the Cheever's case.

301 On April 26, 2013, Plaintiff J. Rice physically handed Case Worker Michael Lebrun mail addressed to (A) Ruby Phillips and (B) Paralegal/Civil Rights Activist B. J. Smith which had inside it a lawsuit against prison officials for their biological torture of me.

302 On April 29, 2013, Plaintiff J. Rice physically handed Case Worker Michael Lebrun outgoing mail addressed to (A) Blenda Rice which was filled of food samples and letter to Boston FBI Agent Geoffrey Kelly requesting his office DNA and toxicology test the samples that Mrs. Rice was

going to mail and (B) Paralegal B. J. Smith which was filled of the same food samples sent to Mrs. Rice for FBI Agent Kelly.

303 On May 3, 2013, Plaintiff J. Rice physically handed Case Worker Chris Tortora outgoing mail addressed to (A) Gloria Watkins which was filled of food samples, (B) Michael Wiggins and (C) Attorney/Clerk Jeannette McGlamery which he claimed Plaintiff had to open and show him the contents which Plaintiff refused to do so the mail with the exception of the article of mail addressed to Mrs. Watkins. Then, Mr. Tortora handed Plaintiff a read out of mail his account that depicted no funds for mail addressed the individuals given to Mr. Lebrun on April 26 and 29, 2013, which meant the mail didn't leave the institution. Mr. Tortora stated he would look into it.

304 Still on May 3, 2013, at approximately 12:31 PM, Tortora came back to Plaintiff J. Rice's cell with mail given to him and Mr. Lebrun stating "You didn't let me and Mike see what is inside so I am not taking them to the mailroom. I am in control." (See Exhibit No. 3).

305 On May 24, 2013, Plaintiff J. Rice did physically hand mail addressed to (A) Prison Legal Services Attorney Leslie Walker which was filled of food samples previously attempted to be mailed to Paralegal B. J. Smith and (B) Paralegal B. J. Smith which had inside it only the lawsuit against Prison Officials for the retaliatory biological torture for refusing to plead guilty to the Cheever's case.

306 About an hour later, Lebrun came back to my cell stating "You must show me the contents of the mail to Walker and Smith because they are both trouble makers. You can't send that bitch and Rev. Sharpton's state coon no lawsuits or food samples with DNA in them." He then slid the mail under my cell door in DDU at MCI Cedar Junction which I refused to open in front of him so he walked away. (See Exhibit No. 4).

307 The Massachusetts State and Federal Courts held the practice of Prisoners being compelled to show prison officials the contents of their mail was unconstitutional years prior to Lebrun and Tortora imposing it against Plaintiff J. Rice so it was only imposed to Plaintiff to stop the outside world from learning of the biological Nazi style torture of me in reprisal of refusing to plead guilty to the Cheever's case.

308 The seizure of my Property and censoring of my mail is why some of my claims are procedurally defaulted so equitable tolling should be granted.

PART IV

In this Section, it outlines how Def.(s) Michael Kasprzak, James Redd, Sr., and John DeRusha did

sexual assault, physically assault and racially discriminate against  Plaintiff J. Rice in an attempt

to coerce the Class to stop speaking out about how the Nazi Style Death penalty system was

employed against him in reprisal of the Cheever's case being dismissed.  These Civil and Human

Rights Violations took place at MCI Cedar Junction's DDU Unit.

SEXUAL AND PHYSICAL ASSAULT/RACIAL DISCRIMINATION

309 On January 13, 2013 at MCI Cedar Junction in the punitive segregation unit known as DDU, Defendants Kasprzak and John DeRusha came to Plaintiff J. Rice's cell which was only after they allowed every other prisoner shower.

310 While stripping the Plaintiff for the shower, Def. Kasprzak did reach in the cell door slot attempting to strike the Plaintiff in the penis which we brushed briefly the Plaintiff's penis. This is captured on camcorder video operated by Guard Michael Perkins.

311 Next the Plaintiff's cell door was opened where Plaintiff stepped out his cell stating "Kasprzak sexually assaulted me" loud so it was captured on camcorder video.

312 Defendant Kasprzak said "You're not getting a shower. You're going to the multi-purpose room" where Plaintiff was taken and secured inside a therapeutic cage but the handcuffs and leg shackles remained on the Plaintiff. The camcorder video was turned off by Perkins.

313 After the camcorder video was turned off, Def. Kasprzak opened the door to the therapeutic cage where he and Def. DeRusha entered it with the Plaintiff. They began punching the Plaintiff which Def. DeRusha stated "You lawsuit Nigger – we will lose our jobs if you get our DNA." Def. Kasprzak stated "stop talking about having (Guard Mark) Glazebrook's DNA in that lawsuit that I took from your cell with the letter to the FBI asking them to investigate us and the D.A. for the Cheever's case.

314 First Def. DeRusha grabbed Plaintiff's testicles and the Dr. Kasprzak grabbed Plaintiff's testicles along with squeezing them so Plaintiff head-butted and spit in Kasprzak's face.

315 After Plaintiff used self-defense to break the grip on his testicles. Def.(s) Kasprzak and DeRusha began repeatedly punching the Plaintiff. Next Def. Redd entered the multi-purpose room where

he too entered the cage while Def. Kasprzak held Plaintiff head upright and Def. Redd did place the bottle of chemical agent only an inch from Plaintiff's face and sprayed Plaintiff in the face.

316 About an hour or less the Plaintiff was allowed to speak with Mental Health where first the hand and leg restraints were removed without being captured on camcorder video. Plaintiff informed Mental Health that he was assaulted.

317 Plaintiff was next assaulted with bodily harm where the leg shackles were placed on his ankles on extremely tight where Def. Redd wouldn't allow them to be loosened which was captured on video.

318 Plaintiff was forced to walk and climb stairs to the medical protocol room where Def. Redd ordered my medical exam to be filmed in violation of my medical privacy including denying Plaintiff's request that the camcorder operator film from outside the room through the window so the audio unit captured. Next Def. Redd denied Nurse Marianne Dolan to perform a sexual assault medical exam.

319 Due to these assaults, Plaintiff sustained injuries and pain to his head, shoulders, ribs, penis, testicles, ankles, neck, eyes, respiratory system and wrist.

320 Chemical agents aren't supposed to be applied to the Plaintiff because he has a heart murmur and suffers from asthma.

PART V

In this Section, it outlines how Def.(s) Michael Morrissey and Edward J. Doherty did further

conspire with the class of Defendants to maliciously, selectively and vindictively prosecute

Plaintiff J. Rice at Def. Kasprzak's behest in an attempt to coerce the Class to stop speaking out

about how the Nazi Style Death Penalty System was employed against the class in reprisal at the

Cheever's case being dismissed.  These Civil and Human Rights Violations took place at

Wrentham District Court.

MALICIOUS, SELECTIVE AND VINDICTIVE PROSECUTION

321 A day shy of eight months from the January 13, 2013 incident, on August 12, 2013, Plaintiff J. Rice was arraigned in Wrentham District Court on one count of A&B (Assault and Battery) with Bodily fluids substance on Correctional Facility Employee (i.e., Def. Kasprzak).

322 At Plaintiff's arraignment, he stated upon the Court record the he had to employ self-defense by spitting in Kasprzak who had me by my testicles because I filed a lawsuit that I was seeking DNA testing of several guards' DNA and seeking an independent probe into Norfolk County D.A. Office and the Department of Corrections for the Cheever's assault case. That this was selective and vindictive prosecution because after the January 13, 2013 incident, Plaintiff J. Rice again wrote Def. Morrissey requesting to file criminal charges against Def. Kasprzak for sexual assault. This letter has been lost with numerous other legal and personal documents.

323 Def. Morrissey further covered up his Co-Defendants, et al, unholy alliance with Aryan Nation Prisoners to conduct the death penalty system because Plaintiff J. Rice freely admitted that he spat in Def. Kasprzak's face in self-defense to break his grip upon Plaintiff's testicles.

324 On April 24, 2014, Plaintiff represented himself ProSe because no Court appointed lawyer wanted to file a Motion for (A) Buccal Swab of Third Part, (B) Funds for DNA Expert and Testing which on August 8, 2014, Plaintiff filed each Motion ProSe (See Exhibit No. 5).

325 Also, on August 8, 2014, Plaintiff filed a Motion For Discovery for Production of the camcorder video which existed after the Plaintiff's arraignment because the disciplinary hearing took place after the Plaintiff's arraignment.

326 At the disciplinary hearing, Plaintiff pointed out that the disciplinary report which Defendant Kasprzak falsely claims Plaintiff provokingly turned and spit in his fact after he was secured in

the therapeutic cage, but the camcorder video directly contradicted this claim. Def. Kasprzak and Mark L. Reilly did conspire to lose the camcorder video evidence because it was an exculpatory piece of evidence that would lead to Plaintiff being exonerated.

327 On August 9, 2014, the date Plaintiff was scheduled to orally argue Motions For (A) Buccal Swab of Third Party, (B) Funds For DNA Expert and Testing and (C) Dismissal, Def. Morrissey abruptly dismissed the case. The facts and law were on Plaintiff's side for the DNA issue and dismissal.

328 Def. Morrissey failed to investigate the charges because had he did then he would've learned that the video directly contradicted Kasprzak's disciplinary report. Furthermore, had he probe the charges then he could've secured the exculpatory camcorder video evidence.

329 Simply Def. Morrissey brought this false charge in an attempt to coerce the Plaintiffs into silence because they were and currently still are seeking an independent probe into the false criminal assault charge prosecuted by Norfolk County D.A. Office and the grave criminal, civil and human rights violations of biological Nazi style torture (as listed above) in reprisal for the Cheever's case dismissal.

330 Plaintiff J. Rice wrote Def. Morrissey informing him that Defendants Kasprzak and Reilly were going to destroy the exculpatory video that was mailed certified but the letter was seized by Defendants Ryan Resendes and Daniel Flavin on October 11, 2014.

331 Due to Def. Morrissey's malicious prosecution, it deprived the Plaintiff his constitutional rights against false arrest, illegal detention, free from cruel and unusual punishment, intentionally inflicted emotional stress and did enter into a conspiracy with prison officials. Case in point, on October 9, 2014, Def. Morrissey moved for dismissal that was granted which was Def. Morrissey's further conspiracy of covering up for his Co-Defendants due to the fact this is the

date Plaintiff J. Rice was set to argue his ProSe Motion For DNA Swab from Def. Kasprzak and others and for DNA Testing/Expert pursuant to state law Prison Officials due to the Supreme Judicial Court decision in In Jansen Petitioner, 444 Mass. 112 (2203).

332 Clearly, Def. Morrissey was aware of his Co-Defendants illegal death penalty and special eating systems and only sought to further cover them up by dismissing this case prior to DNA testing, Especially where Plaintiff J. Rice stated in open court and his ProSe pleading that he did spit in Def. Kasprzak's face but in self defense which camcorder video evidence at the incident would prove. Therefore, this is the true essence of Malicious, Selective and Vindictive Prosecution. See Pearson v. Callahan, 555 U.S. 223 (2009); Harlow v. Fitzgerald, 457 U.S. 800 (1982) and Messerschmidt v. Millender, 132 S.Ct. 1235 (2012).

333 Plaintiffs notified Def.(s) Doherty and Morrissey that they would be seeking Civil Litigation against them (See Exhibit No. 6).

334 This false criminal case is proof of Def. Morrissey entering in an unholy alliance with the defendants, et al, and Aryan Nation Prisoner hitmen which is all part of the continuing conspiracy of campaign of harassment in an attempt to coerce the class into silence.

PART VI

In this Section, it outlines further biological torture of Plaintiff J. Rice in an attempt to coerce a

guilty plea in the Kasprzak's case and to silence the class about the Nazi Style Civil and Human

Rights Criminal Violations where the Class possesses DNA evidence to prove the Death Penalty

System was employed in the Cheever's case.  These Civil and Human Rights Violations took place

at MCI Cedar Junction.  DNA samples are going to be needed from everyone named in this

section to establish the death penalty system.

335 On September 18, 2013 at lunch, Plaintiff J. Rice was given contaminated Chicken Stew by Lr. Daniel Flavin who said "Enjoy your Aryan Stew." Prior to eating, Plaintiff swabbed the food. The food left a cigarette and chemical agent aftertaste in Plaintiff's mouth. Plaintiff mailed the swab to Co-Plaintiff B. Rice on September 19, 2013.

336 On September 18, 2013 at dinner, Plaintiff J. Rice was given contaminated bread that had either bodily fluids and/or chemical agent by CO Chris Pakuris and Pasta meat sauce that had an odd smell by CO Calvin Vega. Prior to eating Plaintiff swabbed the sauce. The sauce swab and slice of bread was mailed to Co-Plaintiff B. Rice on September 19, 2013.

337 On September 19, 2013 at approximately 4 PM, Mental Health Clinician Joe Kelly walked by Plaintiff J. Rice's cell door stating "Enjoy eating your Aids bread tonight." At dinner Plaintiff J. Rice was given contaminated bread that had either bodily fluids or chemical agents all on it and gravy that had a very foul odor by CO Chris Pakuris. Plaintiff swabbed the gravy. The swab and slice of bread was mailed to Co-Plaintiff B. Rice on September 20, 2013.

338 On September 19, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Brian Leavitt. The coffee had something floating in it so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on September 20, 2013.

339 On September 20, 2013 at breakfast, Plaintiff J. Rice was given contaminated cups of coffee by CO Brian Leavitt. The coffee had something floating in it so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on September 20, 2013.

340 On September 21, 2013 at lunch, Plaintiff J. Rice was given contaminated Pasta by CO Jason Bernard who called it "Anti-body Pasta." The pasta had an odor smell so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on September 23, 2013.

341 On September 24, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Leo Marchand who called it "Special Coffee."  Something was floating in the coffee so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on September 24, 2013.

342 On September 24, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Ramos.  The juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on September 24, 2013.  CO Ramos first name is unknown.  Also, Plaintiff was given Chicken Salad and Potato Salad by CO Leo Marchand who verbally claimed it was contaminated.  Both food items had a foul smell so Plaintiff swabbed them both and mailed the swab to Co-Plaintiff B. Rice on September 24, 2013.

343 On September 25, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Ronald A. Prouix. Something was floating in the coffee so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on September 25, 2013.

344 On September 25, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by the Infamous CO Ryan Resendes.  Something was floating in the juice so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on September 25, 2013.

345 On September 26, 2013 at breakfast, Plaintiff J. Rice was given contaminated oatmeal and bread by Co Jason Badger.  The oatmeal had an odd look and either bodily fluids and/or chemical agent on the bread.  CO Badger claimed semen was in the food.  Plaintiff swabbed the oatmeal and mailed the swab with a slice of bread to Co-Plaintiff B. Rice on September 27, 2013.

346 On September 26, 2013 at lunch, Plaintiff J. Rice was given contaminated Sloppy Joe by CO Jason Badger. The food had an odd smell so Plaintiff swabbed the Sloppy Joe and mailed the swab to Co-Plaintiff B. Rice on September 27, 2013.

347 On September 26, 2013 at dinner, Plaintiff J. Rice was given contaminated bread by CO Chris

Pakuris who said "Enjoy the Aryan bread." There was either bodily fluids and/or chemical agent

on the bread so Plaintiff mailed the bread to Co-Plaintiff B. Rice on September 30, 2013.

348 On September 27, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of

coffee by CO Steve Mr. Bournazian, toast by CO Jason Badger and Eggs by CO Brian Leavitt.

Something was floating in the coffee and the eggs were wet so Plaintiff swabbed both

individuals. There was something all over the bread. Both swabs and a slice of bread were

mailed to Co-Plaintiff B. Rice on September 30, 2013.

349 On September 27, 2013 at lunch, Plaintiff J. Rice was given contaminated Baked Beans and

Coleslaw by CO Brian Leavitt. Both items were swabbed because they had an odd look and

smell. Juice was given by CO Steve M. Bournazian. Juice had something floating in it so Plaintiff

the juice. The swabs were mailed to Co-Plaintiff B. Rice on September 30, 2013.

350 On September 28, 203 at dinner, Plaintiff J. Rice was given contaminated Chicken Stew and Rice

by CO Brown (H is first name is unknown but he is white with a bald head and tattoos). Food

had an odd look and left both a cigarette and chemical aftertaste in Plaintiff mouth along with

making his body shake and him to vomit. But prior to eating, Plaintiff swabbed the food and

mailed it to CO-Plaintiff B. Rice on September 30, 2013. Also, CO Brown gave Plaintiff J. Rice

pre-poured cups of juice that had something floating in it so Plaintiff swab it and mailed it to Co-

Plaintiff B. Rice on September 30, 2013.

351 On September 28, 2013 at lunch, Plaintiff J. Rice was given contaminated Pasta and sauce by CO

Brian Leavitt who claimed he tampered with the food so Plaintiff swabbed it and mailed it to Co-

Plaintiff B. Rice on September 30, 2013.

352 On September 29, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured juice by CO Michael Kasprzak. The juice has something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on September 30, 2013.

353 On September 30, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Steve Fagan who claimed "Bodily fluids were in the coffee." There was something floating in the coffee so Plaintiff swabbed it and mailed swab to Co-Plaintiff B. Rice on September 30, 2103.

354 On September 30, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Ryan Resendes. The juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on September 30, 2013.

355 On October 1, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured juice by CO Michael Lontok. The juice had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 1, 2013.

356 On October 3, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Brian Leavitt. The coffee had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 3, 2013.

357 On October 3, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Jason Badger and Chicken Salad by CO Brian Leavitt. The juice had something floating in it. The chicken salad left a cigarette aftertaste in the Plaintiff's mouth and made Plaintiff's body shake. Both food items were swabbed and the swabs mailed to Co-Plaintiff B. Rice on October 3, 2013.

358 On October 3, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Brown (His first name is unknown but he has hair) and Chicken Stew by Sgt. Leslie Colon. Both food items left a cigarette aftertaste in the Plaintiff's mouth so Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on October 3, 2013. After Plaintiff ate he felt something odd in his mouth so he spit in a piece of toilet paper and mailed out with the food samples on October 3, 2013.

359 On October 4, 2013 at dinner, Plaintiff J. Rice was given contaminated bread by CO Chris Pakuris. The bread had something all over it that was either bodily fluids and/or chemical agent. Plus as handing Plaintiff the bread, CO Pakuris mad a spitting sound. Plaintiff mailed the bread to Co-Plaintiff B. Rice on October 7, 2013.

360 On October 6, 2013 at dinner, Plaintiff J. Rice was given contaminated Gravy by CO Joseph Dore. The gravy had a very odd look so Plaintiff swabbed it and mailed it to Co-Plaintiff B. Rice on October 7, 2013.

361 On October 8, 20138 at breakfast, Plaintiff J. Rice was given contaminated eggs by CO Ryan Resendes. The eggs were wet so Plaintiff swabbed them and mailed the swabs to Co-Plaintiff B. Rice on October 8, 2013.

362 On October 9, 2013 at dinner, Plaintiff J. Rice was given contaminated Pasta Sauce by CO Calvin Vega who verbally claimed "Aids and Hepatitis" was in the sauce so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. rice on October 10, 2013.

363 On October 9, 2013, Plaintiff was given his bread that he ordered from the Canteen by CO Ryan Resendes with him was Sgt. Chris Pacheco and Lt. Daniel Flavin who all called it "special rat

bread." There were either bodily fluids or chemical agent all over the bread so Plaintiff mailed slice of the bread to Co-Plaintiff B. Rice on October 9, 2013.

364 On October 10, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Brian Leavitt who said "keep drinking our exposure." Something was floating in the coffee so Plaintiff swabbed it and cold cereal by CO Jason Badger which the cereal was wet. The swab and cereal flakes were mailed to Co-Plaintiff B. Rice on October 10, 2013.

365 On October 11, 2013 at lunch, Plaintiff J. Rice was given contaminated Coleslaw and Baked Beans by CO Steve Fagan. The Coleslaw was inundated in liquid and the beans had an odd look so Plaintiff swabbed both items and mailed the swabs to Co-Plaintiff B. Rice on October 14, 2013.

366 On October 11, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Thomas Augustini [sic] and CO Brown (the one with hair) who the latter called it "Kasprzak's juice special" so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on October 13, 2013.

367 On October 12, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Ashraff Comma who called it "Virus Coffee." The coffee had something floating in it so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 14, 2013.

368 On October 12, 2013 at lunch, Plaintiff J. Rice was given contaminated Chop Suey by CO Brian Leavitt who said "Good Lunch Chewing Tobacco" so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 14, 2013.

369 On October 13, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Calvin Vega who called it "Rat Coffee." Something was floating in the coffee so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 14, 2013.

370 On October 13, 2013 at lunch, Plaintiff J. Rice was given contaminated Chili by CO Calvin Vega who said "Eat that cigarette spit" so Plaintiff swabbed the Chili and mailed the swabs to Co-Plaintiff B. Rice on October 14, 2013.

371 On October 13, 2013 at dinner, Plaintiff J. Rice was given contaminated meatball sauce by CO Calvin Vega which had an odd look and smell so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 14, 2013.

372 On October 14, 2013 at breakfast, Plaintiff J. Rice was given contaminated Eggs by CO Ashraff Gomma which were wet so Plaintiff swabbed the Eggs and mailed the swab to Co-Plaintiff B. Rice on October 14, 2013.

373 On October 15, 2013 at lunch, Plaintiff J. Rice was given contaminated Chicken, Potato Salad and Soup by CO Jason Badger who called the soup "Aryan Soup." All the food had a foul odor so Plaintiff swabbed all the food and mailed the swabs to Co-Plaintiff B. Rice on October 15, 2013.

374 On October 15, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it and Spaghetti that was inundated in liquid by CO Chris Pakuris so Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on October 16, 2013.

375 On October 19, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by CO Ashraff Comma who said "Enjoy the Aryan Coffee." Something was floating in the

coffee so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on October 19, 2013.

376 On October 19, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Ashraff Gomma who said "This is our country so eat us." There was something floating in the juice so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 19, 2013.

377 On October 19, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by James Ludico who said "Here's for you faggot." Something was floating in the juice so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on October 19, 2013.

378 On October 20, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee by Sgt. Demanville (His first name is unknown but he got fired for making a threatening call to the hospital that held escape prisoner Tamik Kirkland so guards could get overtime). Something was floating in the coffee so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 21, 2013.

379 On October 20, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Ryan Resendes who said "Hmmm, Hep Juice." Something was floating in the juice so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Rice on October 21, 2013.

380 On November 16, 2013 at lunch, Plaintiff J. Rice was given contaminated Rice by CO Ryan Resendes. The rice had an odd look and odor so Plaintiff swabbed the Rice and mailed the swab to Co-Plaintiff B. Rice on November 18, 2013.

381 On November 18, 2013 at dinner, Plaintiff J. Rice was given contaminated pudding that had something brown in it, Chicken sauce that had an odd look and pre-poured cups of juice that

had something floating in it by CO Ryan Resendes. Plaintiff swabbed each food items and mailed the swabs to Co-Plaintiff B. Rice on November 19, 2013.

382 On November 19, 2013 at breakfast, Plaintiff J. Rice was given contaminated Eggs that were wet by CO Ryan Resendes and pre-poured cups of coffee that had something floating in it by CO Branchinni (Whose first name is unknown). Please note both Resendes and Branchinni [sic] claimed the coffee was contaminated. Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on November 19, 2013.

383 On November 19, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Branchinni [sic]. Plaintiff swabbed the juice and mailed the swab to CO-Plaintiff B. Rice on November 19, 2013.

384 On November 19, 2013 at dinner, Plaintiff J. Rice was given contaminated Gravy that had an odd look and smell by CO Chris Pakuris who claimed it was contaminated so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on November 19, 2013.

385 On November 27, 2013 at breakfast, Plaintiff J. Rice was given contaminated Cold Cereal that was wet and pre-poured cups of coffee by CO Ryan Resendes and CO Jason Badger. Plaintiff swabbed the coffee and mailed the coffee swab with cereal flakes to Co-Plaintiff B. Rice on November 28, 2013.

386 On November 29, 2013 at lunch, Plaintiff J. Rice was given contaminated Baked Beans that looked like something was in them by CO Brian Leavitt. Plaintiff swabbed the beans and mailed the swab to Co-Plaintiff B. Rice on December 1, 2013.

387 On November 30, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by CO Ashraff Gomma. Plaintiff swabbed coffee and mailed the swab to Co-Plaintiff B. Rice on December 1, 2013.

388 On November 30 2013 at lunch, Plaintiff J. Rice was given contaminated Chop Suey by CO Ryan Resendes who verbally claimed bodily fluids was in the said food and pre-poured cups of juice by CO Ashraff Gomma who claimed 'feces was in the juice and good which there was what appeared to be feces in it." Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on December 1, 2013.

389 On November 30, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Michael Lontok and Chicken Stew that had a very odd smell by CO Aaron Valla. Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on December 1, 2013.

390 On December 1, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in them by CO Jason Badger and oatmeal that had an odd look and smell by CO Ryan Resendes. Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on December 2, 2013.

391 On December 1, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO La Russo (His first name is unknown) and Chili and Rice that had a very foul odor by Sgt. Rebekah Samuel who said "Deadly eating." Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on December 2, 2013.

392 On December 2, 2013 at breakfast, Plaintiff J. Rice was given contaminated syrup that was watery by CO Jason Badger and coffee that had something floating in it by CO Ashraff Gomma that he called 'Ninja Coffee." Ninja is code word for "HIV" or "Aids." Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on December 2, 2013.

393 On December 3, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Ryan Resendes. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 3, 2013.

394 On December 4, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Steve Fagan. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 4, 2013.

395 On December 4, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Phil Vieira who said "Enjoy the itch." Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 2013.

396 On December 5, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Steve Fagan. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 5, 2013.

397 On December 5, 2013 at lunch Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Robert Hawkins who called it "special Juice" along with CO Ashraff Gomma. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 5, 2013.

398 On December 6, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by Ashraff Gomma. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 2013.

399 On December 6, 2013 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Michael Lontok and CO Brown (First name unknown) who the latter claimed "Bodily Fluids are in the juice." Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on December 6, 2013.

400 On December 7, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by CO Ashraff Gomma who claimed spit was in the coffee so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on December 9, 2013.

401 On December 7, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by CO Ashraff Gomma. Juice had something floating in it which was possibly "spit" because Gomma claimed spit was in the cup."

402 On December 9, 2013 at breakfast, Plaintiff J. Rice was given contaminated oatmeal that had an odd look and smell by CO Jason Badger. Plaintiff swabbed the oatmeal and mailed it to Co-Plaintiff B. Rice on December 9, 2013.

403 On December 9, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Ashraff Gomma and Pasta Salad that had an odd look and smell by CO Ryan Resendes. Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on December 9, 2013.

404 On December 9, 2013 at dinner, Plaintiff J. Rice was given contaminated Bread that had either
bodily fluids and/or chemical agent on it by CO Calvin Vega. Plaintiff mailed the bread to Co-
Plaintiff B. Rice on December 9, 2013.

405 On December 10, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of
coffee that had something floating in it by CO Brian Leavitt. Plaintiff swabbed the juice and
mailed it to Co-B. Rice on December 10, 2013.

406 On December 10, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of
juice that had something floating in it by CO Brian Leavitt. Plaintiff swabbed the juice and
mailed it to Co-Plaintiff B. Rice on December 10, 2013.

407 On December 11, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of
coffee that had something floating in it by CO Brian Leavitt. Plaintiff swabbed the coffee and
mailed it to Co-Plaintiff B. Rice on December 11, 2013.

408 On December 23, 2013 at lunch, Plaintiff J. Rice was given contaminated Meatball Sauce that
had an odor /smell by CO Jason Badger who called it "Kasprzak's special lunch for a Nigger Rate"
as handing Plaintiff the food tray. Plaintiff swabbed the said sauce and mailed the swab to Co-
Plaintiff B. Rice on December 2013.

409 On December 24, 2013 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of
juice that had something floating in it and Chop Suey that had an odd smell by CO Brian Leavitt.
Plaintiff swabbed both food items given by CO Leavitt and mailed the swabs to Co-Plaintiff B.
Rice on December 26, 2013.

410 On December 25, 2013 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of
coffee that had something floating in it by CO Bishop (His first name is unknown. He is white

with a bald head). Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on December 26, 2103. At approximately 9:30 AM CO Resendes came to the tire door stating "That nigger rat Jordan Rice is going to eat our HIV and Hep for not pleading guilty to the Kasprzak case." Today is our Aryan Christmas!

411 On December 25, 2013 at lunch, Plaintiff J. Rice was given contaminated Gravy that had an odd look and smell by CO Ryan Resendes. Plaintiff swabbed the Gravy and mailed the swab to Co-Plaintiff B. Rice on December 26, 2013.

412 On December 25, 2013 at lunch, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids or chemical agents by Sgt. Leslie Colon and CO Calvin Vega who said "Latino Rat Killer Brad" and "Nigger Food." Plaintiff mailed the Bread to Co-Plaintiff B. Rice on December 26, 2013.

413 On December 30, 2013 at lunch, Plaintiff J. Rice was given contaminated Potato Salad that had an odd smell and look by CO Ryan Resendes and pre-poured cups of juice that looked like bodily fluids were floating in it by CO Ashraff Gomma. Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on December 30, 2013.

414 On December 30, 2013 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids or chemical agent on it by CO Fernando Vieira. Plaintiff mailed slice of Bread to Co-Plaintiff B. Rice on December 30, 2103.

415 On December 31, 2013 at lunch, Plaintiff J. Rice was given contaminated Soup that had an odd look and smell by CO Ryan Resendes. Plaintiff swabbed the soup and mailed the swab to Co-Plaintiff B. Rice on January 2, 2014.

416 On December 31, 2013 and January 1, 2104 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by CO Vieira. Plaintiff mailed the Bread slices from each date to Co-Plaintiff B. Rice on January 2, 2014.

417 On January 7, 2014 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by CO Leavitt so Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Rice on January 7, 2014.

418 On January 7, 2014 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Leavitt so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on January 7, 2014.

419 On January 7, 2014 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Ramos and Pasta Meat Sauce that had an odd look and smell by CO Pakuris who both verbally claimed the food was contaminated so Plaintiff swabbed both food Items and mailed the swabs to Co-Plaintiff B. Rice on January 7, 2014.

420 On January 24, 2014 at lunch, Plaintiff J. Rice was given contaminated Coleslaw that had an odd smell by CO Gomma so Plaintiff swabbed the Coleslaw and mailed the swab to Co-Plaintiff B. Rice on January 24, 2014.

421 On January 25, 2014 at lunch, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it and Chop Suey that had an odd smell and odor by CO Gomma so Plaintiff swabbed the Chop Suey and mailed the swab with a slice of Bread to Co-Plaintiff B. Rice on January 27, 2014.

422 On January 25, 2014 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Lontok and Baked Beans that had an odd look and smell

by CO Vega who verbally claimed the food was contaminated.  Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on January 27, 2014.

423 On January 26, 2014 at breakfast, Plaintiff J. Rice was given contaminated Oatmeal by CO Resendes and pre-poured cups of coffee by CO Tranhan.  Both food items had a foul odor and something was in them so Plaintiff swabbed both food items and mailed swabs to Co-Plaintiff B. Rice on January 27, 2014.

424 On January 26, 2014 at dinner, Plaintiff J. Rice was given contaminated sauce that had an odor and Bread that had either bodily fluids and/or chemical agents on it by CO Vieira who verbally claimed food was contaminated.  Plaintiff swabbed the food items and mailed the swabs to Co-Plaintiff B. Rice on January 27, 2014.

425 On February 15, 2015 at lunch, Plaintiff J. Rice was given contaminated Pasta Sauce that had an odd look and smell and Bread that had either bodily fluids and/or chemical agents on it by CO John Doe No. 9 (A.K.A. CO Curry whose first name is unknown).  Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on February 15, 2014.

426 On or about February 19, 2014 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Leavitt so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on February 19, 2014.

427 On February 22, 2014 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent by CO Vega.  Plaintiff mailed the Bread to Co-Plaintiff B. Rice on February 24, 2014.

428 On April 19, 2014 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of dark purple juice by CO Leavitt.  The juice didn't appear to have anything in it while the cups of juice

were full but CO's Leavitt, Resendes and Flavin all said "Aryan Poo-Poo Juice for refusing to

plead guilty to the Kasprzak case and filing a DNA lawsuit that's fucking the D.O.C.!"  When the

said Plaintiff drank the juice, at the bottom of the cups were pieces of feces so he spit out the

juice in the cup then he poured it out leaving out the feces in the cup with some juice and he

next placed the feces and juice on a piece of toilet paper.  Then Plaintiff mailed the swab to Co-

Plaintiff B. Rice on April 21, 2014.  The feces belongs to either CO's Leavitt, Resendes or Flavin

and/or or their Aryan Nation hitmen which DNA testing can prove but some of Plaintiff J. Rice's

DNA will be in the swab due to spitting out the juice in the cups.  Plaintiff J. Rice was vomiting

and sick for two days after this matter due to consuming feces that was placed in the juice.

429 On April 20, 2014 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice by

CO Pacheco who claimed "spit" was in the juice and there appeared to be something floating in

the juice so Plaintiff swabbed it and mailed the swab to Co-Plaintiff P. Adams on April 20, 2014.

430 On May 31, 2014 at lunch, Plaintiff J. Rice was given contaminated Chop Suey that had an odd

look and smell by CO Gomma and pre-poured cups of juice by CO John Doe No. 10 (His Last

name is Ramos but he isn't CO Samuel Ramos).  Prior to eating, Plaintiff swabbed both food

items.  Both food items left a cigarette aftertaste in the Plaintiff's mouth.  Plaintiff mailed both

swabs to Co-Plaintiff B. Adams on June 2, 2014.

431 On May 31, 2014 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice by

CO Jane Doe No. 7 (CO Gianelli [sic] unsure of her first name but could be Kathy) who said

"Exposer Juice."  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Adams on

June 2, 2014.

432 On June 3, 2014 of breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of juice

that had something floating in it by CO Badger and Chili that had an odd look and smell by CO

Resendes.  Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Adams on June 2, 2104.

433 On June 3, 2014 of breakfast, Plaintiff J. Rice was give contaminated pre-poured cups of coffee that had a hair floating in it that was a Caucasian hair by CO Leavitt who called it "Aryan Coffee." Plaintiff swabbed the coffee with the hair on the swab and mailed the swab to Co-Plaintiff B. Adams on June 3, 2014.  CO Leavitt is Caucasian so the hair may belong to him.

434 On June 6, 2014 at breakfast, Plaintiff J. Rice was given contaminated Cold Cereal that was wet and had an odd smell by CO Leavitt.  Plaintiff placed the wet cereal on toilet paper and mailed it to Co-Plaintiff B. Rice on June 6, 2014.

435 On June 5, 2014 at dinner, Plaintiff J. Rice was given contaminated Bread that had either Bodily fluids and/or chemical agent on it by CO John Doe No. 11 (CO Tigano [sic] his first name is unknown).  Plaintiff mailed a slice of Bread to Co-Plaintiff B. Rice on June 6, 2014.

436 On June 7, 2014 at lunch, Plaintiff J. Rice was given contaminated Chop Suey that had an odd look and smell by CO Resendes.  Plaintiff swabbed the food and mailed the swab to Co-Plaintiff P. Adams on June 9, 2014.

437 On June 8, 2014 at dinner, Plaintiff J. Rice was given contaminated Bread that had either Bodily Fluids and/or chemical agent by CO Vieira who claimed "semen" was on the bread.  Plaintiff mailed a slice of Brad to Co-Plaintiff P. Adams on June 9, 2014.

438 On June 11, 2014 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by CO Ramos.  Plaintiff mailed the Bread to Co-Plaintiff B. Adams on June 11, 2014.

439 On June 12, 2014 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by CO Pakuris.  Plaintiff mailed the Bread to Co-Plaintiff B. Adams on June 12, 2014.

440 On June 13, 2014 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by CO Lontok.  Plaintiff mailed the Bread to Co-Plaintiff B. Adams on June 13, 2014.

441 On June 14, 2014 at lunch, Plaintiff J. Rice was given contaminated Rice that was wet and pre-poured cups of juice that had something floating in it by CO Resendes.  Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff B. Rice on June 16, 2104.

442 On June 14, 2014 at dinner, Plaintiff J. Rice was given contaminated Rice that was wet by CO Vega so Plaintiff swabbed the Rice and mailed the swab to Co-Plaintiff B. Rice on June 16, 2014. Also, CO Lontok gave Plaintiff J. Rice contaminated Bread that had either bodily fluids and/or chemical agent on it which was mailed to Co-Plaintiff B. Rice on June 16, 2104.

443 On June 15, 2014 at dinner, Plaintiff J. rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by CO Vega who verbally claimed "semen" was on the bread. Plaintiff mailed the slice of bread to Co-Plaintiff P. Adams on June 16, 2014.

444 CO Pacheco refused to feed Plaintiff J. Rice on October 1, 2014 and October 2, 2014 at breakfast and lunch which plaintiff's cell and tier will prove.

445 On October 3, 2014 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by CO Lontok.  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on October 6, 2014.

446 On October 4, 2014 at lunch, Plaintiff was given contaminated pre-poured cups of juice that had something floating in it by CO Fagan and Chop Suey that had an odd look by CO Leavitt. Prior to eating, Plaintiff swabbed both food items. After the Plaintiff ate the food, it left a cigarette and chemical agent aftertaste in his mouth. Plaintiff mailed the swabs to Co-Plaintiff B. Rice on October6, 2014.

447 On October 5, 2014 at lunch, Plaintiff J. Rice was given contaminated Chili and Rice by CO Fagan and pre-poured cups of juice that had something floating in them by CO Gomma. Plaintiff swabbed the Chili and Rice prior to eating it and he swabbed the juice but didn't drink it. The food left a cigarette aftertaste in his mouth. The swabs were mailed to Co-Plaintiff B. Rice on October 6, 2014.

448 On or about October 3, 4, or 5, 2015 at dinner, Plaintiff J. Rice was given contaminated Sauce and Bread that had either bodily fluids and/or chemical agent by CO John Doe No. 12 (CO Baptiste whose first name is unknown but he is a Black Haitian immigrant) and warm pre-poured cups of juice by CO Nunez which CO Hill was standing by him verbally claiming bodily fluids were in the juice which Plaintiff felt due to the juice being warm that urine was in it. Plaintiff swabbed the food items prior to eating but didn't drink the juice or eat the bread. The Sauce left a cigarette after taste in Plaintiff's mouth. Plaintiff mailed the swabs wit Bread Slice to Co-Plaintiff B. Rice on October 6, 2014.

449 On September 11, 2013, while Plaintiff J. Rice was in group CO Pacheco did enter said Plaintiff cell opening a tube of brand new toothpaste. Then as escorting said Plaintiff back to his cell CO Pacheco said "Hope you enjoy your Aryan paste" so said Plaintiff put a huge amount of toothpaste on a piece of toilet paper and mailed the toothpaste swab to Co-Plaintiff B. Rice on September 13, 2013.

450 On November 18, 2013, while Plaintiff J. Rice was in group, CO Resendes did enter said Plaintiff's

cell opening a tube of brand new toothpaste.  Then as escorting said Plaintiff back to his cell CO

Resendes said "Enjoy your White Cock toothpaste."  So Plaintiff put a huge amount of

toothpaste on a piece of toilet paper and mailed the toothpaste swab to Co-Plaintiff B. Rice on

November 19, 2013.

451 Due to the Plaintiff not being allowed to brush his teeth with non-contaminated toothpaste, he

developed cavities, gingivitis, plaque, tartar and bad breath.

PART VII

In this section, it outlines how the Class had their Civil and Human Right Criminally violated in attempt to coerce Plaintiff J. Rice into pleading guilty to the Kasprzak case in an attempt to cover up the continuing conspiracy, i.e., campaign of harassment of the Class, which the Class possesses DNA evidence to prove beyond any doubt. All these Civil and Human Rights Criminal Violations took place at MCI Cedar Junction.

452 The Defendants, et al, jointly used blatant coercement tactics of civil and human rights

violations in an attempt to (A) silence Plaintiffs about possessing the exculpatory DNA evidence;

(B) not seeking DNA testing in the criminal case brought by Kasprzak and (C) plead guilty to

assaulting Kasprzak in the false criminal case which Plaintiffs well set forth in painstaking detail.

WITHHOLDING/LOST LEGAL AND PERSONAL PROPERTY

453 The day after Plaintiff J. Rice was arraigned in Wrentham District Court, he was transferred from

DDU punitive segregation unit to the BMU punitive segregation unit on August 13, 2013.  Both

units are at MCI Cedar Junction.

454 All Plaintiff J. Rice's property was in the DDU or in the main property.

455 All Plaintiff J. Rice's property was withheld from him and still to date hasn't been issued to him.

The property was originally being held to coerce a guilty plea and now it's still being held for

refusing to plead guilty.

456 The property still being withheld is legal documents, legal books, personal documents, personal

books, personal pictures, headphone extension and Mac5 Headphones (See Exhibit No. 7).

457 On March 21, 2013, Captain Jeff Grimes answered Plaintiff J. Rice's Informal Complaint Form he

filed while in DDU challenging how the headphone extension wasn't given back to him by CO

Nelson ViVieiros (a.k.a. CO Phil Viveiros) which Grimes authorized "The contraband headphone

extension will be kept in his long term property storage" (See Exhibit No. 8).

458 On April 6, 2013, CO Swanson of the property depart authorized there was no "thick headphone extension in your excess property." Also, he claimed a cart of both personal and legal paperwork was sent to the BMU which had a few items belonging to Plaintiff (See Exhibit No. 9).

459 It didn't have Plaintiff J. Rice's Legal Book titled "I Am Innocent" (See Exhibit No. 10).

460 Plaintiff J. Rice can't outline all the missing/withheld property because Defendant Resendes seized the Informal Complaint Form and Grievance outlining all the property. Def. Resendes seized all Plaintiff's legal document on October 11, 2014.

461 On September 15, 2014, Plaintiff J. Rice filed a Motion to Order Prison Officials to Release Defendant's Legal and Personal Properties and a Motion to Order Prison Officials to Release Brand New Property and Long Term Storage/Personal Properties (See Exhibit No. 5).

462 Therefore, Def. Morrissey was fully aware of Prison Officials coercement tactics, but he took no steps to correct these Civil Rights Violations.

463 Prison Officials are law enforcement officers so they are agents of the Def. Morrissey and other District Attorneys in the Commonwealth. See Gunter v. Superintendent, OCCC, 72 Mass. Appt. Ct. 1101 at *1 (2008)(Corrections Officers are law enforcement officers under §of the [Massachusetts Tort Claims] Act"). Furthermore, it is well established in case law that Corrections Officers are law enforcement, See, County of Barnstable vs. American Financial Corp, 51 Mass. App. Ct. 213, 216 (2001); Commonwealth V. Druce, 453 Mass. 686, 697-98 (2009) and Commonwealth v. Gallati, 40 Mass. App. Ct. 111, 113 (1996).

464 All Civil and Human Rights Violations listed in Paragraphs of this complaint committed by Prison Officials were acts as agents of Def. Morrissey so Dr. Morrissey is liable for them.

ATTEMPTS TO DENY PLAINTIFF TO BE PRESENT IN COURT

465 On August 13, 2013, Def. Chris Pacheco stated to Plaintiff J. Rice while escorting him to the BMU

Unit, "I heard what you said to the Judge about having our DNA. We will kill you in the BMU if

you don't shut up and plead guilty. You will never go back to that fucking Court again."

466 Plaintiff J. Rice filed an Informal Complaint Form in regards to the threats of denying him to be

present in Court because other Correctional Officers verbally stated I would be to go to Court

(See Exhibit No. 11).

CELL DESTRUCTION AND PROPERTY SEIZURE

467 Another coercement tactic employed to coercement of a guilty plea was the destruction of the

Plaintiff's cell and property along with the seizure of Plaintiff's property but in the BMU unit

every prisoner has an institutional security camera in their cell that records 24 hours for 7 days a

week.

468 Each cell destruction and property seizure set forth herein took place in the BMU Unit at MCI

Cedar Junction and is captured on Plaintiff cell video.

469 On September 2, 2013, Plaintiff J. Rice was out of his cell from 8:30 AM – 10:30 AM and during

this time either Def. Leo Marchand, Jr. and/or Def. Jason P. Robichaud did enter the opening a

sealed manila envelope attached with Charge Slip addressed to Attorney Susan Costa, who was

Plaintiff J. Rice's stand by counsel in the Kasprzak case (See Exhibit No.(s) 12-14).

470 The legal mail was filled with food samples, toothpaste samples and legal documents/motions

because Correctional Staff were contaminating his food and toothpaste in an attempt to coerce

a guilty plea so Plaintiff was mailing out the said samples and motion with affidavit requesting

testing (See Exhibit No(s). 12-14).

471 All contents inside the mail with envelope was seized which Def. Marchand verbally claimed
responsibility for the legal mail seizure (See Exhibit No(s). 12-14).

472 When Plaintiff got back to his cell, he requested to speak with the Lieutenant, whose first name
is currently unknown, but his last name is Smith, so he is Def.  John Doe No. 1, Def.(s) Marchand
and Robichaud next assaulted Plaintiff via violently snatching his hands through the cell door
slot slamming his wrist against the metal cell door slot stating "Fuck you nigger. You're trying to
fuck us in court and on a lawsuit by sending our DNA to your lawyer to prove we are trying to
infect you and make you plead guilty to Kasprzak's case and you're asking her to get the
camcorder video to prove Kasprzak hit you in the dick, but we destroyed the video so you get
nothing but a good guilty plea" (See Exhibit No. 12).

473 After the assault and racial discrimination, Plaintiff called mental health crisis because he felt
like employing deadly self-defense against both Defendants, but instead he wanted to channel
his extreme emotions by discussing them with a mental health clinician.

474 Plaintiff was allowed to speak with Def. Jamie Chapman who is a mental health clinician.  She
said to Plaintiff in reply of him explaining the situation, "Look here nigger rat, I know the
situation with your lawsuit and refusing to plead guilty to assaulting Kasprzak who will lose over
destroying the video and you asking for [CO Marc L.] Glazebrook's DNA in the letter to your
lawyer with food [samples] in it that proves we are trying to infect you with HIV and Hep.  You're
trying to make officers lose our jobs.  I ain't rating these guys out for you and your lawyer so you
getting a D-Report for false crisis call.  You will learn we do what we want here!  No go upstairs
and have some cheese with that wine' (See Exhibit No. 13).

475 Plaintiff was issued a D-Report, i.e., punished for speaking out.

476 Due to the assaults by Def(s). Marchand and Robichaud, Plaintiff J. Rice sustained injuries to his wrist, shoulder and back.

477 On August 31, 2013, while Plaintiff J. Rice was out of cell for shower, Def. Michael Lontok did enter Plaintiff's cell where he seized food samples and contaminated Plaintiff's bed linen with an agent that caused Plaintiff to itch and body break out in rash (See Exhibit No. 15).

478 On September 12, 13, 14, 15 and/or 16, 2013, Plaintiff J. Rice was out of his cell for Disciplinary reason where Def. Resendes did totally ransacked it via removing all Plaintiff's legal documents from their manila envelopes throwing in one big pile on the cell bed. Seized non-contraband items, i.e., bottle of vitamins and writing pens (See Exhibit No. 16).

479 Def. Resendes repeatedly seized Plaintiff's writing pens because he stated, "Is to stop [Plaintiff] from writing the Courts, (his) lawyer, FBI and D.A. in regards to their ongoing tactics in an attempt to coerce [Plaintiff] to (A) stop pursuing [his] federal lawsuit and (B) plead guilty to assaulting Kasprzak in criminal court (See Exhibit No. 16).

480 On January 21, 2014, Def. Resendes on the 7x3 Shift did ransack Plaintiff cell via throwing Plaintiff's legal documents and all other property in one big pile on Plaintiff's bed. Def. Resendes ripped legal documents and seized legal documents including a lawsuit against Prison Officials that was partially completed. Then on the 3x11 Def/ Calvin Vega did ransack plaintiff cell in the same manner while Plaintiff was showering.

481 On January 22, 2014, Def. Resendes did enter Plaintiff's cell where he ransacked it via throwing all Plaintiff's legal and personal properties I one big pile on his bed; contaminated Plaintiff's bed linen with an agent that caused his body to itch and break out in a rash; and opened sealed

addressed legal mail to (A) FBI, (B) U.S. Attorney Carmen Ortiz and personal mail to (A) Blenda Rice, (B) Patricia Adams and (C) Brianna Adams.

482 On January 27, 2014, Def. Resendes did again enter Plaintiff J. Rice's cell ransacking it via throwing all Plaintiff's legal and personal property in one big pile on his bed; seized non-contraband items, i.e., soap, writing pens, and legal mail sealed and addressed to the FBI.

483 On February 11, 2014, while Plaintiff J. Rice was out of his cell for disciplinary reasons, Def. Resendes did enter Plaintiff's cell seizing his sneakers.

484 On February 26, 2014, while Plaintiff J. Rice was in Court representing himself against the false charges brought by Def. Kasprzak, Def. Resendes entered Plaintiff J. rice's cell ransacking it via throwing all his legal and personal properties in one big pile on his bed, ripped legal documents including a lawsuit he started against Prison Officials.

485 On March 4, 2014, while Plaintiff was out of his cell, Def. Resendes did enter Plaintiff's cell ransacking it via throwing all Plaintiff's legal and personal properties on his bed in on big pile and ripped legal documents including a lawsuit he started drafting against Prison Officials.

486 On April 1, 2014, Plaintiff was out of his cell when Def. Resendes did enter it twice on two separate occasions.  First between 8:30 AM – 10:30 AM and then 1:30 PM – 3:30 PM where he seized non-contraband items, i.e., my pillow and writing pens along with ransacking the cell via throwing all Plaintiff's Legal and Personal Property in one big pile on his bed.

487 On April 16, 2014, Def. Resendes did enter Plaintiff cell ransacking it via throwing Plaintiff's personal and legal property in one by pile on his bed.  He seized non-contraband items, i.e., lawsuit that Plaintiff started drafting against Prison Officials, documents and writing pens.

488 On May 17, 2014, Def. Resendes did ransack Plaintiff's cell via throwing all Plaintiff's personal and legal properties in one big pile on his bed. He seized non-contraband items, i.e., legal documents, lawsuit against Prison Officials, writing pens and soap. Also, he (Resendes) contaminated Plaintiff's bed linen with chemical agent that caused Plaintiff to wheeze and body to itch along with break out in rash.

489 On April 16, 2014, Def. Resendes did enter Plaintiff J. Rice's cell ripping up Motions and supporting affidavit for the Kasprzak case, ransacking Plaintiff's cell via throwing all Plaintiff's legal and personal properties in one big pile on left on Plaintiff's cell bed. Also, he contaminated Plaintiff's bed linen with an agent that caused him to itch and break out in rash.

490 On July 4, 2014, Def(s). Ashraff Gomma and Def. John Doe No. 2 did remove Plaintiff from his cell where they seized addressed of Former Prison Employee Jeannine Keys and Affidavit from Prisoner Christopher Fisher. The affidavit outlined how Mr. Fisher witnessed abuse of Plaintiff and how Prison Guards asked him for his semen to place in Plaintiff's food.

491 On July 5, 2014, Def. Resendes and Def. Flavin did assault Fisher in the shower over the affidavit. Mr. Fisher's fingers were broken. After this assault, Def. Resendes and Fisher stated "Rice your nigger ass is next dude."

492 On June 30, 2014, Def. Chris Pakuris did enter Plaintiff J. Rice's cell where he contaminated Plaintiff's bed linen with an agent that caused Plaintiff to itch and break out in a rash and seized non-contraband items, i.e., writing pens. The next be (Pakuris) walked Plaintiff back from the shower to the cell making the following threat, "I took all your pens so good luck trying to get our DNA in a lawsuit or in the Kasprzak case now plead guilty and stop trying to get our DNA because we will lose our job and we will kill you nigger rat ass if that happens." (See Exhibit No. 17).

493 On July 11, 2014, Def. Resendes did enter Plaintiff cell where he threw all Plaintiff's legal and personal properties in a big pile on his bed along with seizing the following non-contraband items: (1) T-shirt, (1) Pair of boxers shorts and (2) bags of cough drops. Then after Plaintiff put his property back in order while the shower on the 3x11 Shift Def. Vega entered Plaintiff 's cell where he contaminated the bed linen via throwing it on the ground, clothes in the same manner and three on the ground in one big pile all Plaintiff's property.

494 As walking Plaintiff back to his cell, Def. Vega said, "Write me up for fucking up your cell for not pleading guilty to Kasprzak case and for having our DNA because [Superintendent's Investigator Scott] Black will punish you with another D-Report for rating on us so plead guilty."

495 On July 29, 2014, Def. Resendes did violently ransack Plaintiff cell where he threw all Plaintiff's legal documents in one big pile with all my other property, contaminated my bed linen with agents that make my body itch and hard for Plaintiff to breathe and caused his body to break out in rash; seized non-contraband items, i.e., my writing pen, emery board, black folder, legal documents including lawsuit drafted against Prison Officials and letter from Brianna Adams that contained her address and phone number which Def. Resendes gave to his Aryan Nation Prison hitman Francis Lang who yelled out Plaintiff Adams' personal information, destroyed legal documents and Riddell Sneakers via removing the laces and taken the inner parts of Plaintiff's watch out. Def. Resendes informed Plaintiff J. Rice this is for not pleading guilty to the Kasprzak case, rating me out about placing a hit on your life in the yard with Aryan National Prisoner hitmen Andrew Pasquale and for trying to get my DNA in Court so I took your pens so you can't file no Court Motions (See Exhibit No. 18).

496 On August 5, 2014, Def. Resendes did enter Plaintiff J. Rice's cell where he ransacked it via throwing all Plaintiff's legal and personal property in one big pile on his bed which destroyed all

my legal documents and books because I had my gray shorts in the sink soaking that he

(Resendes) removed and put on top of everything! The bed linen was contaminated with an

agent that caused Plaintiff to itch, wheeze and break out in a rash. Also, he seized non-

contraband items, i.e., Plaintiff's only two writing pens, headphones, toothpaste and family

pictures. As escorting Plaintiff back to his cell Def. Resendes said, "We got all your pens so you

can't get our DNA in Court or write us for anything. You're a dead nigger if you don't plead out

to the Kasprzak case."

497 On August 17, 18, 19, 20 and/or 21, 2014, Plaintiff J. Rice was out of his cell for disciplinary

reasons where Def.(s) . Flavin and Resendes enter Plaintiff cell maliciously ransacking it via

throwing all Plaintiff's legal and personal properties in one big pile on his bed; contaminated bed

linen with an agent that caused Plaintiff to itch and break out in a rash; seized non-contraband

items as follows: pillow, pillow case, legal articles, legal documents for the Kasprzak case (i.e.,

Motion For Discovery, affidavit and memorandum of law), cough drops, two writing pens,

toothbrush, book of stamps and two bars of soap. (See Exhibit No. 19).

498 On August 15, 2014, at approximately 8:30 AM, Def. Resendes walking by Plaintiff J. Rice's cell

stating "Time to rip Rice's cell apart for everything he wrote about me in Court papers. I will

show him he better shut -up and plead guilty to the Kasprzak case because the DA told us the

Judge went ever order no cell video turned over!"

499 While Plaintiff J. Rice was out of his cell from 8:30 AM – 10:30 AAM, Def. Resendes, Flavin and

Bishop did enter Plaintiff cell ransacking it via destroying the Civil Federal ProSe Packet from the

U.S. District Court that was partially ripped apart, brand new white envelopes received from

canteen on August 12, 2014 which Plaintiff showed his cell camera at approx. 11:04 AM,

magazine picture that was in hanging in the designate area for prisoners to hang photos was

ripped and removed off the wall, and seized non-contraband items, i.e., 10 manila envelopes, pictures inside homemade paper picture frame, five addressed white envelopes and two newspaper.  (See Exhibit No. 20).

500 The seizure of Plaintiff's property and censoring of my mail is why some of the claims above and below are procedurally defaulted so equitable tolling should be granted.

501 Def. Morrissey was aware of these facts in regards to the destruction and seizure of property/cell coercement tactic s because Plaintiff poignantly outlined them in affidavit placed on the Wrentham District Court Docket on August 8, 2014, September 4, 2015 and September 15, 2014 (See Exhibit No. 5).

502 Def. Morrissey took NO Steps to halt or remedy these above coercement tactics that took place to induce a guilty plea in the bogus Kasprzak criminal case.

DENIED CELL WATER

503 Plaintiff J. Rice's cell water was used as punishment where Def. Resendes did turn off the cell sink water but Plaintiff J. Rice can't state all the dates it took place due to the fact all defendants as stated above seized his legal and personal properties repeatedly.

504 On June 3, 2014, Dept. of Public Assistant Director Paul Halfmann wrote Def. Saba in regards to Def. Resendes turning off.  Please note, Mr. Halfmann states he received a letter from the Plaintiff 'where states his water has been shut off once again," because Plaintiff wrote Mr. Halfmann several times prompting him (Halfmann) to personally tour the BMU Unit where Mr. Halfmann witnessed for his own two eyes that the Plaintiff's cell water was off which proved the defendant's claims of Plaintiff being a crazy liar were their excuse to cover up how Plaintiff cell water was being used as a coercement tactic (See Exhibit No. 21).

505 On August 8, 2016, in the BMU Unit of breakfast tray collection Prisoners Francis Long stated to Def. Resendes "Hey since Jordan doesn't have to stay in the cell, I broke the TV volume for trying to get your DNA and not pleading guilty in Court and you guys can't let us Aryan Nation group kill him then turn off his cell water to kill him of dehydration."  Resendes relay was "That nigger also wrote me up this week which I am in trouble for so that's a good idea. Heil Hilter."  Then at approximately 7:23 AM, Def. Resendes did turn off my hot and cold water which the BMU video facing the utility door will demonstrate.  Plaintiff's call video will demonstrate the water worked from the time Plaintiff was placed in the cell on August 7, 2014 at approximately 10 PM until on August 8, 2014 at approximately 7:23 AM (See Exhibit No. 22).

506 On August 8, 2014 at approximately 8:30 AM, Plaintiff informed Def. Flavin that his cell water was off which his replay was "we fixed the water pressure at Kasprzak's request. (See Exhibit No. 22).

507 Plaintiff went without cell water until Nov. 3, 2014.  This is 87 days Plaintiff was denied to groom his hygiene including brushing his teeth that caused him pain in his teeth and his gums to bleed.

FAILURE TO PROTECT

508 The defendants willfully failed to protect the Plaintiffs in an attempt to coerce them into silence about the DNA evidence they possessed to prove their Nazi Style biological torture known as the death penalty system and to force Plaintiff J. Rice into pleading guilty to assaulting Def. Kasprzak.  All these failures to protect took place at MCI Cedar Junction.

509 On January 1, 2014, Def. William Miller informed Plaintiff J. Rice that he made a pack with Def(s). Resendes, Flavin, Chris Pacheco, Jason Badger, Brian Leavitt, Ashraff Gomma, Lontok, Pakuris, Vega, Rowan Hill and Morrissey to force Plaintiff J. Rice to please guilty to assaulting

Def. Kasprzak and force the Plaintiffs to stop speaking out about having DNA evidence that they want the FBI to probe and test or he would infect the Plaintiff's with his HIV and Hepatitis "C" diseases. He is given his co-defendant his bodily fluids to place in Plaintiff J. Rice's food until he pleads guilty to assaulting Kasprzak starting on the first day of the year.

510 Defendant Miller is infected with herpes, hepatitis "C" and HIV. Def. Miller is worth over five hundred thousand dollars. Due to his diseases, his nickname is "Triple H."

511 Def. Miller is an Aryan Nation Member and has over a 20 year history of working with rogue MCI Cedar Junction Correctional Officers in attempting to infect minority prisoners with in his infectious diseases and to cover up their participation Prison Guards and Defendants has issued Def. Miller disciplinary reports and criminal charges in the part.

512 Def. Miller who is a sexual predator is incarcerated for raping his biological mother.

513 On January 3, 10, 17, 24 and 31, 2014, Def. Miller informed Plaintiff J. Rice that he has been given his bodily fluids to Def(s). Resendes, Pacheco, Badger, Hill, Leavitt, Flavin, Lontok, Vega, Gomma, and Pakuris to place in J. Rice's food. Def. Miller called this "his Friday disease roll call which for months would take place on a Friday."

514 On February 7, 14, 21 and 28, 2014, Def. Miller verbally performed his "Friday roll call Plaintiff J. Rice.

515 On February 13, 2014, Def. Chapman did verbally threatened Plaintiff J. Rice with being assaulted by Aryan Nation Prisoner Ralph Sullivan.

516 On March 7, 14, 21 and 28, 2014, Def. Miller verbally performed his "Friday disease roll call" to Plaintiff J. Rice as outlined in this complaint.

517 On April 11, 2014, Def. Leavitt opened the cell door slot of Prisoner Ralph Sullivan given him some type of contraband stating to Plaintiff J. Rice, "Rice, I just paid for the hit on your life in the restart chairs."

518 On April 4, 11, 18 and 25, 2014, Def. Miller verbally performed his "Friday disease roll call" to Plaintiff J. Rice was outlined in the complaint.

519 On MY 2, 9, 16, 23 and 30, 2014, Def. Miller verbally performed his "Friday disease roll call" to Plaintiff J. Rice as outlined in the complaint.

520 On May 15, 2014, the night before the failed hit on Plaintiff J. Rice's life, Def(s). Hill and Pakuris did seize Plaintiff's personal property from his cell and stated to said Plaintiff "We will have you fucked up in the restart chairs by Ralph Sullivan because you ain't going to stop trying to fuck us with that DNA Lawsuit."

521 On May 16, 2014, either Def. Fagan or Leavitt arranged an unsuccessful plot to have Plaintiff J. Rice killed by Aryan Nation Prisoner hitman Ralph Sullivan who was given a handcuff key at breakfast which hours later Sullivan used in the restart char area (in the BMU Unit) to remove his leg shackles and assaulted Plaintiff with the leg shackles while Plaintiff J. Rice was shacked to the restart chair.

522 Plaintiff J. Rice sustained injuries to his left arm, head and back.  He now has permanent scars to all injured areas and always now has headaches.

523 In an attempt to cover up the unsuccessful hit, Def. Fagan issued a false disciplinary report that claimed Plaintiff J. Rice was swinging his arms at Sullivan which the restart chair room video depict J. Rice just blocking in a defensive manner.

524 On June 6, 13, 20 and 27, 2014, Def. Miller verbally performed his "Friday disease roll call" to Plaintiff J. Rice as outlined in the above paragraph.

525 On July 4, 11, 16 and 25, 2014, Def. Miller verbally performed in "Friday disease roll call to Plaintiff J. Rice.

526 On July 22, 2014, Def. Resendes asked Plaintiff J. Rice if he was going to the yard which we answered "Yes" and Resendes replied "Good Pasquale wants you for making him miss his visit on Friday (i.e., July 18, 2014) which is when Prisoner Andrew Pasquale was issued a disciplinary report (d-report) for threatening Plaintiff J. Rice.

527 To set-up a physical altercation between Plaintiff J. Rice and Pasquale, Def. Resendes and Def. Badger didn't place prisoners in the yard as their cell numerical order were.

528 Plaintiff J. Rice was in cell No. 106, Def. Miller was in cell No. 107 and Pasquale was in cell No. 110 which yard video will prove. Def. Badger did allow Pasquale to physically carry a red scrub top to the yard when prison policy states all prisoners must wear clothes to the yard. Pasquale was purposely placed beside Plaintiff J. Rice in the yard when Def. Miller should've been.

529 While in the yard, Pasquale used the scrub top to bend the yard fence to break it which yard video will prove along with: (A) Aryan Nation Prisoner Francis Long coached Pasquale how to breach fence which Lang was NEVER disciplined for and (B) Def(s). Badger and Resendes knew Pasquale was breaching the fence that took him approximately 20 minutes to do, but they refused to take action until Plaintiff J. Rice was forced to employ self-defense after Pasquale physically entered Plaintiff J. Rice's cage. In fact, Def. Badger is captured in yard video only walking half way down the row of fences to look to see if Pasquale had successfully entered Plaintiff's cage. Both Def. Badger and Resendes state "This is payback for not copping out to the

Kasprzak case and for having our DNA from November 27, 2013 and filing a lawsuit. Then they told Pasquale "Kill that Nigger."

530 Def. Resendes and Badger gave Pasquale razors so he could slash Plaintiff J. Rice which Pasquale did attempt to stab Plaintiff with a piece of the fence which Plaintiff successfully maneuvered and disarmed Pasquale without injury. The Plaintiff temporarily penned Pasquale to the ground causing injury to Plaintiff's knees, hands, arms and back.

531 Pasquale was able to escape and both of us got to our feet. Plaintiff was able to place Pasquale in a one arm neck lock which Plaintiff contemplated killing Pasquale via breaking his neck because Pasquale had two razors inside his mouth which Plaintiff knew for certain because Pasquale opened his mouth showing the razor stating "I am going to cut your Nigger head off for St. Kasprzak (A.K.A. Def. Kasprzak (See Exhibit No. 23).

532 By this time, responding prison staff arrived on the scene where they sprayed Plaintiff with chemical agent to break the death grip on Pasquale's neck. Next, Plaintiff secured Pasquale's knife made from the fence and handed it to JPS CO Matthew Borgus.

533 Plaintiff J. Rice was placed on full extra restraint status which when a prisoner is placed in the yard in waist restraints and leg shackles due to Def. Resendes issuing Plaintiff a D-Report. Plaintiff remained on said status until May 14, 2015. (See Exhibit No. 23-25).

534 From July 22, 2104 to May 14, 2015, i.e., ten months, Plaintiff couldn't go to the yard because he was on said status where he would be an easy victim for the Defendants and their Aryan Nation Prisoner hitmen to assault and/or murder. Therefore, Plaintiff was forced to stay in his cell 24 hours a day while in punitive segregation.

535 On August 1, 8, 15, 22 and 29, 2014, Def. Miller verbally performed his "Friday disease roll call" to Plaintiff J. Rice as outlined in paragraphs above.

536 On September 5, 12, 19 and 26, 2014, Def. Miller verbally performed his "Friday disease roll call" to Plaintiff J. Rice as outlined in paragraphs above.

537 On October 3 and 10, 2014, Def. Miller verbally performed his "Friday disease roll call" to Plaintiff J. Rice as outlined in paragraphs above.

MAIL CENSORING AND FAILURE TO PROTECT

538 The Defendants did censor the Class of Plaintiffs' (i.e., The Class) correspondences to: (A) stop Plaintiff J. Rice from representing himself effectively; (B) induce a guilty plea; (C) stop the Class from seeking an independent federal probe into the Civil, Human Rights and Human Rights Criminal violations of the Class which there is DNA evidence to prove said violations by the defendants, et al.

PLAINTIFF BRIANNA ADAMS

539 On May 15, 2104, Plaintiff B. Adams mailed Co-Plaintiff J. Rice registered mail (USPS Tracking ID: 9114901230801401144614) which was legal documents for this Class Action lawsuit and for his wrongful conviction which was never received by Co-Plaintiff J. Rice (See Exhibit No. 311).

540 On July 3, 4 and 11, 2014, Plaintiff B. Adams mailed Co-Plaintiff J. Rice first class mail which was legal documents for this Class Action lawsuit and for his injustice which was never received by Co-Plaintiff J. Rice. Please note on July 3, 2014, two letters were mailed. (See Exhibit No. 311).

541 On July 23, 2014, Plaintiff B. Adams mailed Co-Plaintiff J. Rice registered mail (USPS Tracking ID: 911490012080146281309) which was legal documents from this Class-Action lawsuit which was never received b Co-Plaintiff J. Rice (See Exhibit No. 312).

542 On July 21, 2014, Plaintiff B. Adams wrote Def. Saba in regards to the mail censoring which on August 4, 2014, Def. Bower wrote her back stating that none of the mail could be received." (See Exhibit No. 313).

543 On July 29, 2014, Def. Resendes did search Plaintiff J. Rice's cell seizing a letter written to said Plaintiff by Co-Plaintiff B. Adams which Def. Resendes gave it to Aryan Nation Prisoner Francis Lang who yelled out Plaintiff's B. Adams name, address and phone number that was on the letter.  Plaintiff B. Adams wrote Def. Saba who never replied.  (See Exhibit No. 314).

PLAINTIFF PATRICIA ADAMS

544 Plaintiff Patricia Adams is a secretary and the mother of Brianna J. Adams who is the fiancée of Plaintiff J. Rice.

545 After Plaintiff J. Rice began representing himself ProSe on April 25, 2014, he requested Plaintiff P. Adams to assist him via mailing him sample motions, affidavits and memorandum of laws which she agreed to do.

546 On April 30, 2014, Plaintiff P. Adams did send Plaintiff J. Rice 20 sample copies of Motions, affidavits and memorandum of laws which Plaintiff J. Rice never received but apparently the legal documents were given to Def. Miller because on or about May 7, 2014, Plaintiff P. Adams received from Def. Miller who authorized that he had received the legal mail because BMU Prison Guards gave it to him and she isn't to send Plaintiff J. Rice anymore mail or he would rape her as he did his own mother.

547 On May 7, 2014, Plaintiff P. Adams wrote Def. Black who is the Superintendent Special Investigator (i.e., Def. James Saba).  Def. Black never phoned or wrote Plaintiff P. Adams despite the fact he had Miller's actual letter.  Nor did Def. Black speak with Plaintiff J. Rice or discipline Def. Miller.

548 On May 8, 2014, Plaintiff P. Adams did mail Plaintiff J. Rice the same legal documents which were again given to Def. Miller who wrote Plaintiff P. Adams on May 15, 2014, wrote Plaintiff P. Adams informing her as the same outlined in paragraph No. 546.

549 On May 15, 2014, Plaintiff P. Adams again wrote Def. Black who never phoned or wrote Plaintiff P. Adams.  Plaintiff P. Adams despite the fact he (Black had Miller's actual letter; he never disciplined Def. Miller or spoke with Plaintiff J. Rice.

550 On May 19, June 18 and July 1, 2014, Plaintiff P. Adams again mailed Plaintiff J. Rice the same said legal documents which were repeatedly given to Def. Miller because on May 23, June 26 and July 8, 2014, Plaintiff P. Adams received mail from Def. Miller informing he received the mail and he would rape her if she continued to attempt in aiding Plaintiff J. Rice against the Department of Corrections.

551 On May 23, June 26 and July 8, 2014, Plaintiff P. Adams wrote Def. Black who never phoned or wrote said Plaintiff nor did he (Black) spoke to Plaintiff J. Rice or discipline Def. Miller.

552 Each time Plaintiff P. Adams wrote Def. Black she enclosed the actual letter Def Miller wrote her and the envelope that it came in.

553 Each time Plaintiff P. Adams received unwanted mail from Def. Miller, it did cause her extreme emotional distress and mental anguish which led directly to loss of sleep and lack of appetite.

554 On June 10 and August 8, 2014, Plaintiff P. Adams mail censoring was brought to the attention of Def. Morrissey on each court appearance in Wrentham District Court.  At no time did Def. Morrissey move to probe or prosecute Def. Miller or Prison Officials because they were all attempting to coerce a guilty plea and stop the Class from attainting an independent criminal probe.

555 Def. Morrissey's failure to execute his duties caused further extreme emotional distress and mental anguish which led directly to advanced loss of sleep and lack of appetite.

556 On July 8, 2014, Plaintiff P. Adams did mail Plaintiff J. Rice the same legal documents which he did finally receive on July 12, 2014 and was able to file several Motions, affidavits and memorandum of law in Wrentham District Court on August 8, 2014.  (See Exhibit No. 5)

PLAINTIFF BLENDA A. RICE

557 Plaintiff B. Rice is the mother of Plaintiff J. Rice.

558 On August 13,22, 31, September 11, 26, October 4, 16, 31, November 28, December 9 and December 24, 2013, Plaintiff B. Rice received letters from Def. Miller who threatened to rape her and infect her with his HIV if her son, Jordan Rice, didn't plead guilty to assaulting Def. Kasprzak in Wrentham District Court.

559 Plaintiff B. Rice wrote Def. Black informing him of these threatening letters which she furnished him with on August 13, August, 22, September 11, September 26, October 4, October 16, October 31, November 6, November 28, December 9 and December 24, 2013, but Def. Black never replied.

PLAINTIFF JORDAN M. RICE

560 On September 5, 2013, Plaintiff B. Rice did send Plaintiff J. Rice certified mail (No(s). 7012 2210

0000 2631 7565 and No(s). 7012 2920 0001 9280) which were received by the prison but

Plaintiff J. Rice never received either article of certified mail and prove it there is an institutional

certified mail log book that a prisoner incarcerated at MCI Cedar Junction must sign to attain the

incoming certified mail. (See Exhibit No. 26).

561 Each article of certified mail contained legal documents needed for this Class-Action lawsuit.

THREATS, HARASSMENT AND ASSAULTS

562 On September 14, 2013, Def. Kasprzak worked in the BMU Unit that Plaintiff J. Rice was held in

despite the open assault case and every 30 minute round he made, he banged on Plaintiff J.

Rice's cell door threatened his life via stating: (A) I destroyed the video so plead guilty or we will

kill you, (B) Plead guilty or all your property is going to get thrown out, (C) I threw out all your

property because you're asking for (CO Marc) Glazebrook's DNA [in Wrentham District Court],

(D) If this case gets dismissed I will kill you and (E) At lunch, he claimed Aryan National Prisoner

hitmen's Hepatitis "C" and HIV bodily fluids were in my food when he brought Plaintiff J. Rice his

lunch via stating "Enjoy eating all the Hep and HIV in this tray. (See Exhibit No. 27).

563 Due to Def. Kasprzak's threat of contaminating Plaintiff J. Rice's food, he couldn't eat and had to

go without food.

564 On October 4, 2104, Plaintiff J. Rice wrote Defendant Morrissey via certified mail outlining the

following: (A) On September 26, 2014, Def. Resendes did censor Plaintiff's mail where he

entered said Plaintiff's cell opening and seizing a manila envelope which contained inside an

application for DNA testing on my wrongful murder conviction; (B) envelopes addressed to Fox

News' Reporter Michael Beaudet, 48 Hours Consultant William Oldham, Attorney Janet Pumphrey, Attorney Ira Gant, Pharma Rivera, Jamie and Joanne Ricci, (C) Motions for Open Wrentham District Court case for assaulting Kasprzak,  (D) Juice samples for DNA testing in the Kasprzak's case because Guards are placing bodily fluids in Plaintiff food and juice in  an attempt to coerce a guilty plea; (E) From September 26-October 3, 2014, Def(s). Flavin, Resendes, Leavitt, Badger and Vega did inform Plaintiff J. Rice and his fiancée, i.e., Plaintiff B. Adams and said Def(s).  had Def. Miller yell out the names and addresses of Plaintiffs B. Adams and B. Rice.  (See Exhibit No. 28).

565 Def. Morrissey did willfully fail to protect Plaintiffs from his Co-Defendants' Civil Rights violations in an attempt to coerce a guilty plea and then into silence.

PART VIII

In this Section, it outlines further biological torture of Plaintiff J. Rice in reprisal of the Kasprzak

case Dismissed as part of the continuing conspiracy, i.e., campaign at harassment.  These Civil

and Human Rights violations took place at MCI Cedar Junction. DNA samples are going to be

needed from every one named in this section to establish the death penalty system.

566 On October 21, 2014 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by Def. Vega who said "Enjoy the O.C. Spray" which means chemical agent on the bread.  Plaintiff mailed a slice of bread to Co-Plaintiff B. Rice on October 21, 2014.

567 On December 3, 2014 at breakfast, Plaintiff J. Rice was given contaminated cereal that was wet by Def. Leavitt who made a spitting sound as spitting sound as handling Plaintiff the tray. Plaintiff put the cereal on a piece of paper and mailed it to Co-Plaintiff B. Adams on December 3, 2014.

568 On December 13, 2014 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by Def. Leavitt.  Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff B. Adams on December 15, 2014.

569 On December 13, 2014 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def(s). Gomma and Leavitt.  Plaintiff swabbed the juice and mailed the swabs to Co-Plaintiff B. Adams on December 15, 2014.

570 On December 29, 2014 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Vega who said "Enjoy the O.C. Spray."  Plaintiff swabbed the juice and mailed the swabs to Co-Plaintiff P. Adams on December 29, 2014.

571 On January 2, 2015 at lunch, Plaintiff J. Rice was given contaminated Baked Beans by Def. Leavitt.  Prior to eating Plaintiff swabbed the said beans.  The beans had an odd taste and made the Plaintiff's body itch and shake.  Plaintiff mailed the swab to Co-Plaintiff B. Rice on January 2, 2015.

572 On January 4, 2015 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee and juice that had something floating in it by Def. Resendes. Plaintiff swabbed both items and mailed the swabs to CO-Plaintiff P. Adams on January 5, 2015.

573 On January 4, 2015 at dinner, Plaintiff J. Rice was given contaminated Gravy and Mash Potatoes that had an odd look mixed together and odd smell by Def. Vega who mixed the food together and verbally claimed the food was contaminated by him. Plaintiff swabbed the food and mailed the swab to Co-Plaintiff P. Adams on January 5, 2015.

574 On January 5, 2015 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by Def. Gomma. Plaintiff swabbed the coffee and mailed the swab to Co-Plaintiff P. Adams on January 5, 2015.

575 On January 5, 2015 dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it and bread that had either bodily fluids and/or chemical agent on it by Def. Vega. Plaintiff swabbed the juice and mailed the swab with a slice of bread to Co-Plaintiff P. Adams on January 5, 2015.

576 On January 2, 2015 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. John Doe No. 11. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on January 2, 2015.

577 On January 6, 2015 at breakfast, Plaintiff J. Rice was given contaminated Cereal that was wet by Def. Resendes. Plaintiff put some cereal flakes on a toilet paper and mailed it to Co-Plaintiff B. Adams on January 6, 2015.

578 On January 17, 2015 at breakfast, Plaintiff J. Rice was given contaminated Grits that had a very odd smell by Def. Resendes.  Plaintiff swabbed the grits and mailed the swab to Co-Plaintiff B. Adams on January 19, 2015.

579 On January 17, 2015 at dinner, Plaintiff J. Rice was given contaminated Baked Beans by Def. Vega.  Prior to eating, Plaintiff swabbed the food and mailed the swab to Co-Plaintiff B. Adams on January 19, 2015. Plaintiff's body shook and he vomited.  Food had an odd taste.

580 On January 18, 2015 at lunch, Plaintiff J. Rice was given contaminated Chili and Rice by Def. Resendes.  Prior to eating, Plaintiff swabbed the food and mailed the swab to Co-Plaintiff B. Adams on January 19, 2015.  Plaintiff's body shook and he vomited due to the food that had an odd taste.

581 On January 25, 2015 at breakfast, Plaintiff J. Rice was given contaminated pre-poured cups of coffee that had something floating in it by Def Morar and at lunch Def. Morar gave pre-poured cups of juice that had something floating in it to Plaintiff.  Plaintiff swabbed both items and mailed the swabs to Co-Plaintiff P. Adams on January 26, 2015.

582 On January 25, 2015 at dinner, Plaintiff J. Rice was given contaminated Rice and Cabbage that both had an odd smell by Def. Vieira who said to Plaintiff while handing him the tray "Special tray for you.  I hope you like it."  Plaintiff swabbed both food items and mailed the swabs to Co-Plaintiff P. Adams on January 26, 2015.

583 On January 28, 2015 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Badger.  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on January 28, 2015.

584 On January 28, 2015 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Vieira. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on January 28, 2015.

585 On January 29, 2015 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Hill. Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff P. Adams on January 29, 2015.

586 On January 30, 2015 at dinner, Plaintiff J. Rice had contaminated pre-poured cups of juice left in his cell that had an odd smell by Def(s). Carbal and Vieiros and John Doe No. 13 which juice had something floating in it too so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on February 2, 2015. Def. John Doe No. 13 is a white male who lived in Brockton and West Bridgewater.

587 On January 31, 2015 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Valla, Bread that had either bodily fluids and/or chemical agent on it by Def. Wolschon and Chicken Stew that had an odd smell by Def. Vega. Plaintiff swabbed the juice and chicken stew then mailed the swabs with a slice of bread to Co-Plaintiff B. Rice on February 2, 2015.

588 On February 2, 2015 at breakfast, Plaintiff J. Rice was given contaminated Oatmeal that had an odd smell by Def. Badger so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Adams on February 3, 2015.

589 On February 2, 2015 at lunch, Plaintiff J. Rice was given contaminated Pasta Sauce that had an odd taste by Def. Badger. Prior to Plaintiff eating, Plaintiff swabbed the food and mailed the

swabs to Co-Plaintiff B. Adams on February 3, 2015.  Food made Plaintiff's body shake and caused him to vomit.

590 On February 2, 2015 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that something in it by Def. Lontok.  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff P. Adams on February 3, 2015.

591 On February 3, 2015 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something in it by Def. Pacheco.  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff P. Adams on February 3, 2015.

592 On February 3, 2015 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent by Def. Pakuris and pudding that had an odd taste by Def. Pakuris.  Prior to Eating the pudding, Plaintiff swabbed it but didn't eat the bread.  Swab was mailed to Co-Plaintiff B. Adams on February 4, 2015.  Plaintiff's body shook and he vomited.

593 On February 6, 2015 at dinner, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Wolschon and carrots that were wet by Def. John Doe 11.  Plaintiff swabbed both food items and mailed them to Co-Plaintiff B. Rice on February 8, 2015.

594 On February 7, 2015 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Resendes.  Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff B. Rice on February 8, 2015.

595 On February 7, 2015 at dinner, Plaintiff J. Rice was given contaminated Chicken that had an odd smell by Def. Wolschon.  Plaintiff swabbed the Chicken and mailed the swab to Co-Plaintiff B. Rice on February 8, 2015.

596 On February 14, 2015 at dinner, Plaintiff J. Rice was given contaminated Sauce that had an odd smell by Def. Vega who verbally claimed he contaminated it.  Plaintiff was swabbed the Sauce and mailed the swab to Co-Plaintiff P. Adams on February 16, 2015.

597 On March 14, 2015 at dinner, Plaintiff J. Rice was given contaminated Sauce that had an odd smell by Def. Cafarelli who verbally claimed to have contaminated the food and chicken that was surrounded by strange liquid by Def. Vega.  Plaintiff swabbed both food items and mailed the swabs including strange liquid to Co-Plaintiff B. Adams on March 16, 2015.

598 On March 21, 2015 at dinner, Plaintiff J. Rice was given contaminated Beans that had a chemical agent smell by Def. Vega who verbally claimed "O.C. Spray [i.e., chemical agent] virus food" was in the food so Plaintiff swabbed the Beans and mailed it to Co-Plaintiff P. Adams on March 23, 2015.

599 On March 22, 2015 at breakfast, Plaintiff J. Rice was given contaminated Bread that was wet and had an odd smell by Def. Valla.  Plaintiff mailed the Bread Slice to Co-Plaintiff P. Adams on March 23, 2105.

600 On April 24, 2015 at dinner, Plaintiff J. Rice was given contaminated Pasta and Sauce by Def. Wolschon.  Food made Plaintiff's body shake and him vomit, but prior to eating, Plaintiff swabbed the food items and mailed the swabs Co-Plaintiff B. Rice on April 27, 21025.

601 On April 25, 2015 at dinner, Plaintiff J. Rice was given contaminated Pasta, Chicken, Mixes Veggies and Bread that all had an odd taste and the Bread had either bodily fluids and/or chemical agent on it so Plaintiff didn't eat the bread.  All food was swabbed and the swabs mailed with a slice of bread to Co-Plaintiff B. Rice on April 27, 2015.

602 On April 26, 2015 at breakfast, Plaintiff J. Rice was given contaminated Break that was wet by Def. Badger. Plaintiff mailed the Bread to Co-Plaintiff B. Rice on April 27, 2015.

603 On April 26, 2015 at lunch, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it and Chili that had an odd taste by Def. Cafarelli. Plaintiff swab the Chili prior to eating. Plaintiff mailed the swab with Bread Slice to Co-Plaintiff B. Rice on April 27, 2015. The Chili caused the Plaintiff's body to shake that caused him to vomit and have diarrhea.

604 On April 26, 2015 at dinner, Plaintiff J. Rice was given contaminated Bread and Soup by Def. Valla. Both food items had an odd taste. Prior to eating Plaintiff swabbed the soup and mailed the swab with a bread slice to Co-Plaintiff B. Rice on April 27, 2015.

605 On April 28, 2015 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by Def. Badger. Plaintiff mailed the Bread Slice to Co-Plaintiff P. Adams on April 28, 2015.

606 On May 9, 2015 at lunch, Plaintiff J. Rice was given contaminated Pasta and Sauce by Def. Lt. James Redd who claimed "Prisoners DNA in the Pasta" so Plaintiff swabbed it and mailed the swab to Co-Plaintiff B. Adams on May 11, 2015.

607 On May 9, 2015 at dinner, Plaintiff J. Rice was given contaminated Rice that had an odd taste by Def. Vega. Prior to eating, Plaintiff swabbed the Rice and mailed the swab to Co-Plaintiff B. Adams on May 11, 2015.

608 On May 10, 2015 at breakfast, Plaintiff J. Rice was given contaminated Oatmeal that had an odd taste by Def. Cafarelli. Prior to eating, Plaintiff swabbed the Oatmeal and mailed the swab to

Co-Plaintiff B. Adams on May 11, 2015.  Food made Plaintiff's body shake that caused him to vomit and have diarrhea.

609 On May 10, 2015 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by Def. Bercier who verbally claimed food was contaminated. Plaintiff mailed the Bread to Co-Plaintiff B. Adams on May 11, 2015.

610 On May 15, 2015 at dinner, Plaintiff J. Rice was given contaminated Sauce that had an odd taste by Def. Wolschon.  Prior to eating, Plaintiff swabbed the sauce and mailed the swab to Co-Plaintiff B. Rice on May 18, 2015.  Food made Plaintiff's body shake and caused him to vomit and diarrhea.

611 On May 16, 2015 at dinner, Plaintiff J. Rice was given contaminated Bread that had either bodily fluids and/or chemical agent on it by Def.  Vega who said "Enjoy our lawsuit bread Nigger" and Rice with mixed veggies by Def. Cafarelli who said "Good Luck eating that meal."  Plaintiff swabbed the Rice with veggies and mailed the swab with a Bread Slice to Co-Plaintiff B. Rice on May 18, 2015.

612 On May 17, 2015 at lunch, Plaintiff J. Rice was given contaminated Chili that left a cigarette aftertaste in Plaintiff's mouth by Def. Vega.  Prior to eating, Plaintiff swabbed the Chili and mailed the swab to Co-Plaintiff B. Rice on May 18, 2015.

613 On May 20, 2015 at dinner, Plaintiff J. Rice was given contaminated Pasta Sauce that had an odd taste and bread that had either bodily fluids and/or chemical agent in it by Def. Cafarelli.  Prior to eating, Plaintiff swabbed the said Sauce and mailed the swab to Co-Plaintiff P. Adams on May 21, 2015.  Plaintiff never ate the Bread.

614 On May 24, 2015 at lunch, Plaintiff J. Rice was given contaminated Chili and Rice by Def(s). John Doe No(s). 14 (i.e., CO George who is a Black male) and 15 (i.e., CO Griffin who is white) who both stated aloud "Exposed." Plaintiff swabbed the Chili and Rice and mailed the swabs to Co-Plaintiff B. Adams on May 25, 2015.

615 On November 1, 2015 at lunch, Plaintiff J. Rice was given contaminated pre-poured cups of juice that had something floating in it by Def. Bournazian so Plaintiff swabbed the juice and mailed the swab to Co-Plaintiff P. Adams on November 2, 2015.

616 On November 30, 2016 at dinner, Plaintiff J. Rice was given contaminated Beans by Def. Vieira. Food made said Plaintiff's body shake which later that night said defendant verbally claimed his spit and chemical agents were in it. Prior to eating said Plaintiff swabbed the Beans and mailed it out to Co-Plaintiff B. Adams on December 1, 2016. (See Exhibit No. 315).

617 On December 2, 2016 at lunch, Plaintiff J. Rice was given contaminated Beans by Def. Fagan. Food made said Plaintiff's body shake due to the beans being contaminated with an agent by Def. Fagan. Prior to eating said Plaintiff swabbed the Beans and mailed it out to Co-Plaintiff B. Rice on December 2, 2016.

618 On December 21, 2016 at dinner, Plaintiff J. rice was given contaminated Peanut butter and Jelly by Def. Vieira. Food made said Plaintiff's body shake but prior to eating said Plaintiff swabbed the food prior to eating it and mailed the swab to Co-Plaintiff P. Adams on December 22, 2016. (See Exhibit No. 316).

619 On December 25, 2016 at Christmas lunch, Plaintiff J. Rice was given contaminated cranberry sauce, mash potatoes, and gravy by Def. Thibault. Prior to eating said Plaintiff swabbed each item of food and mailed it to Co-Plaintiff B. Rice on December 27, 2016. Def. Thibault stated to

said Plaintiff after he ate 'You ate our spit and chemical agent Aryan Christmas Present for Kasprzak at tray collection time." Then an hour later Def. Dankievitch walked by said Plaintiff's cell door stating "You ate Christmas spit." (See Exhibit No. 317-318). If there is any DNA in Plaintiff's food samples, it belongs to Def(s). Dankievitch, Thibault and Valla that all claimed to spit in Plaintiff's food.

620 On December 25, 2016 at Christmas dinner, Plaintiff J. Rice was given contaminated Peanut Butter, Jelly and Bread that had chemical agent and/or bodily fluids on it by Def. Vieira. Food made the said Plaintiff's Body shake but prior to eating he swabbed it and mailed it with Bread piece to Co-Plaintiff B. Rice on December 27, 2016. Def. Vieira at tray collection stated to said Plaintiff "You ate Christmas O.C. spray (A.K.A. Chemical Agent). (See Exhibit No. 318-319).

621 On December 31, 2016 at dinner, Plaintiff J. Rice was given contaminated Beans, Rice and Bread that the latter food item had either chemical agent and/or bodily fluids on it by Def. Lontok. Food made the said Plaintiff's body shake but prior to eating he swabbed it and mailed the swabs with bread piece to Co-Plaintiff P. Adams on January 2, 2017. (See Exhibit No. 320).

622 On January 1, 2017 at lunch, Plaintiff J. Rice was given contaminated Chili and Rice by Def. Thibault. Food made the said Plaintiff's body shake but prior to eating he swabbed it and mailed the swab to Co-Plaintiff B. Adams on January 2, 2017.

623 On January 1, 2017 at dinner, Plaintiff J. Rice was given contaminated Sauce, Pasta and veggies by Def. Wolschon and bread that had either chemical agent and/or bodily fluids on it by Def. Vieira. Food made said Plaintiff's body shake but prior to eating he swabbed it and mailed the swabs with bread piece to Co-Plaintiff B. Adams on January 2, 2017.

624 On January 3, 2017 at dinner, Plaintiff J. Rice was given contaminated Mash Potatoes by Def. Pakuris and Bread that had either chemical agent and/or bodily fluids on it by Def. Vega. Food made said Plaintiff's body shake, but prior to eating he swabbed it and mailed the swabs with Bread piece to Co-Plaintiff P. Adams on January 3, 2017.

625 On January 4, 2017 at dinner, Plaintiff J. Rice was given contaminated sauce by Def. Pakuris. Food made said Plaintiff's body shake but prior to eating he swabbed it and mailed the swab to Co-Plaintiff B. Rice on January 5, 2017.

626 On February 3, 2017, Def. Rodrigues concluded the grievance against Def(s). Thibault, Dankievitch and Valla who contaminated Plaintiff J. Rice's food on December 25, 2016 without ever interviewing the said Plaintiff. Therefore, a full, fair and balance probe wasn't concluded into the grievance (See Exhibit No. 328).

## SHAMPOO CONTAMINATION

627 Plaintiff is in the BMU Unit where prisoners can purchase shampoo and other hygiene and food items with points earned by attending groups. (See Exhibit No. 83, Page 9-12).

628 On May 15, 2015, Plaintiff J. Rice purchased shampoo with points which Def. Kelly gave the said Plaintiff which the bottle of shampoo was extremely warm. Def. Kelly said to Plaintiff "Here's your Kasprzak urine-poo or bringing us in court." When Plaintiff opened the bottle, it had an odd odor so Plaintiff put a high amount of shampoo on a piece of toilet paper and mailed the shampoo swab to Co-Plaintiff B. Rice on May 15, 2015.

629 On or about May 18, 2015, Def. Kelly and Def. Chapman did verbally torture Plaintiff J. Rice in morning group form 8:30 AM -10:30 AM and noon group from 1:30 PM – 3:30 PM with said

Plaintiff's Aryan Nation Prisoner hitmen Michael Freeman, Francis Lang and Ralph Sullivan via

them all stating "That nigger rat is using Aryan Nation scum, spit and urine shampoo.

<u>TOOTHPASTE CONTAMINATION</u>

<u>630</u> On March 18, 2015, while Plaintiff J. Rice was in the shower Def. Cafarelli did enter his cell

where he claims to have contaminated said Plaintiff's toothpaste with chemical agent and bodily

fluids so Plaintiff placed a large sample of toothpaste on a piece of toilet paper and mailed the

toothpaste swab to Co-Plaintiff B. Adams on March 18 2015.

PART IX

In this Section, it outlines how the Class had their Civil and Human Rights criminally violated in an attempt to coerce them into silence about how they have DNA evidence to prove the continuing conspiracy, i.e., campaign at harassment at the Class starting with the Cheever's Case to the present date.  All these Civil and Human Rights criminal violations took place at MCI Cedar Junction.

AFTER KASPRZAK CASE DISMISSED

631 On October 9, 2014, in Wrentham District Court, the Kasprzak case was dismissed which is the

date Plaintiff J. Rice was scheduled to argue his Motions for DNA testing (See Exhibit No. 29).

632 Def. Morrissey further covered up his Co-Defendants unholy alliance with Aryan Nation

Prisoners to conduct the death penalty system because Plaintiff J. Rice freely admitted that he

spat in Def. Kasprzak's in self-defense to break his grip upon Plaintiff's testicles.  Therefore, Def.

Morrissey was clearly aware of the DNA evidence to prove the death penalty system and to stop

it from being exposed, he simply dismissed the case.

633 The Class's Civil and Human Rights were further blatantly violated by the defendants, et al, in

reprisal of the dismissal and the Class's still ongoing quest for an independent federal civil rights

investigation.

DENIED MENTAL HEALTH CARE

634 On March 6, 2015, Def. Chapman did have Plaintiff J. Rice removed from his BMU Mental Health

group for him simply requesting that she have Aryan Nation Prisoners from stating Plaintiff J.

Rice's mother's name, fiancée's name, victim's name and witnesses name in  Plaintiff J. Rice's

criminal case.  This was racial discrimination due to Plaintiff J. Rice who is Black was respectful

but was removed from group and the disrespectful white prisoners was allowed to stay in

group.  (See Exhibit No. 30).

635 Def. Chapman has tortured Plaintiff J. Rice in attempt to coerce him into silence about the Civil

and Human Rights violation of him because rogue prison guards will be terminated and

incarcerated if the Class is successful.

636 On or about March 9, 2015, Def. Rattigan, who is the Health Service Administrator at MCI Cedar Junction, conducted a mock probe into Plaintiff J. Rice's complaint against Def. Chapman where she or anyone else never spoke with said Plaintiff. (See Exhibit No. 30).

637 On April 2, 2015, Def. Chapman who wasn't Plaintiff J. Rice's mental health clinician, did have him removed from his BMU cell for a 1 on 1 meeting which is only reserved for clinician and clients. Def. Joseph Kelly was Plaintiff J. Rice's clinician at the time.

638 During this 1 on 1, Def. Chapmen, a white woman, began to talk sexually explicit to Plaintiff J. Rice where she stated "Black men have bigger dicks than white men which is why I love your chocolate dick." Then at this point she stood up stating "Whip it out Brother because I am blocking the camera," but Plaintiff J. Rice refused and Def. Chapman said, "Now I will fuck with you every day and I am going to make sure you go back to DDU now!"

639 Def. Chapman really didn't block the therapeutic camera when she stood up. In fact, she conspired with Def. Morrissey, Def. Kelly, Def. Saba, and Def. Lawton to set up Plaintiff J. Rice for a sexual assault criminal case which would've been supported by the institutional BMU therapeutic room video. This was racial discrimination also because Plaintiff J. rice is a Black man who the Defendants wanted to make him appear to be sexually aggressive toward white women like Def. Chapman. This is due to the Kasprzak case being dismissed.

640 After days of mulling over reporting the sexual assault by Def. Chapman on April 7, 2015, Plaintiff J. Rice finally reported the sexual assault at approximately 12 PM.

641 On April 18, 2015 at approximately 8:30 AM, Plaintiff J. Rice was issued a disciplinary report (D-Report) in reprisal for reporting the sexual assault which said Plaintiff was held on accountability for 48 hours instead of the normal 24 hours which was done to circumvent the scheduled visit

between Plaintiffs J. Rice and B. Adams on April 18, 2015.  (See Exhibit No. 33-35).  This was

April 8, 2015 violation of the sexual assault policy No. 631.

642 The violation of the staff's sexual Misconduct with Inmates are:

(A)  Prohibits "retaliation against inmates who refuse to submit to sexual advances are

prohibits" 103 DOC 519.01, was violated the next day after Plaintiff J. Rice was issued a false D-

Report to stop him from having his schedule visit with Plaintiff B. Adams. (See Exhibit NO. 36, at

page No. 2).

(B) "All allegations and incidents of sexual incidents of sexual contact or sexual abuse by

employees, contractors or volunteers with inmates must be reported, fully investigated and

treated in a confidential and serious manner" *103 DOC 519.01*, was violated where the BMU

therapeutic video clearly depicts Def. Chapman standing up several times attempting to coerce

Plaintiff J. Rice to show her his penis as she falsely claimed to have been blocking said video.

Therefore, this matter was fully investigated.  This further violates said policy that states "Any

documents collected during the investigation (incident reports, outside agency reports, training

records, medical records, rosters, photographs, etc.) which assisted in the investigator in the

process.  This section should also include pictures of physical evidence, documentary evidence

(files, records, letters, etc.) and/or a summary of the evidence collected such as laboratory

results, expert opinions etc.  During the investigative process, any data used to corroborate the

findings of the investigation is evidence" *103 DOC 519.04*, Section Five (See Exhibit No. 36, page

No. 4).  Therefore, either the said video wasn't reviewed or ignored because there isn't any

reason for Def. Chapman to stand up and sit down repeatedly.

(C) In the "Standard Operating Procedure for Staff Sexual Misconduct Investigations" which is

attached to the said policy, it states "The Finding unfounded is made if there is no evidence that

the alleged infraction took place" Therefore, the said video was disregard in some manner! (See Exhibit No. 36, page No. 7).

643 Due to the failure to fully investigate, Def. Chapman's sexual advances against Plaintiff J. Rice caused emotional distress and mental anguish to Plaintiffs B. Adams and P. Adams who travelled from their home in Brockton, Massachusetts to MCI Cedar Junction Prison where they were denied to visit with Plaintiff J. Rice on April 8, 2015.

644 On June 15, 2015, while in the BMU Unit Def. Chapman in seek retaliation while in group against Plaintiff J. Rice where she allowed said Plaintiff's listed enemies, i.e., Aryan Nation Prisoners Michael Freeman, Francis Lang and Andrew Pasquale to call the Plaintiff "a lying nigger for filing the sexual complaint against her and threatened" to kill Plaintiff, his mother (i.e., Co-Plaintiff Brianna Adams), his fiancée's mother (i.e., Co-Plaintiff Patricia Adams) and then Plaintiff J. Rice asked Def. Chapman is she "going to stop this harassment me?," and her reply was "That's for rating me out for asking to see your dick" and then kicked Plaintiff J. Rice out of group. (See Exhibit No. 37).

645 Def. Chapman's actions were in clear violation of "staff sexual misconduct with Inmate" at 103 DOC 591.01 that prohibits" retaliation against inmate who refused to submit to sexual advances" (See Exhibit No. 36, at page No. 2).

646 Def(s). Chapman and Saba did also fail to protect and racially discriminated against Plaintiff J. Rice because Aryan Nation Prisoners Freeman, Lang and Pasquale was on Plaintiff J. Rice's enemy list and shouldn't have been in group with him.

647 Due to the Defendants, et al, torture of racial discrimination, sexual harassment, falsely kicked out of group, immunity to Aryan Nation Prisoners to torture, denial to progress through the

mental health program to attain enhanced privileges, and overall torture on or about March 7 2016, Plaintiff J. Rice stopped attending groups which led to have ringing in his ears that led to severe headaches, hearing voices telling him to kill in self-defense of his life and extreme loss of appetite that cause lose of 30 pounds of body weight.  (See Exhibit No. 38).

648 On March 14, 2016, while in the BMU, Def. Calvin Vega did assault Plaintiff J. Rice via violently jerking the handcuffs so he (Rice) called mental health crisis because he felt like killing Def. Vega so at approximately 3:30 PM, 3:31 PM, 3:32 PM, 3:35 PM and 3:40 PM, Plaintiff J. Rice screamed out the side of his cell door "I am in crisis and need to be spoken with " but Def(s). Meffen and Rickis ignored (See Exhibit No. 39).  Plaintiff J. Rice cell video will prove he was screaming out the side of his cell door.

649 All malfeasant actions of Def(s). Meffen and Rickis along with other MPCH Services Inc. employees are clearly in reprisal of Plaintiff J. Rice and his Co-Plaintiffs (A) seeking an independent federal probe into the civil and human rights criminal violations by the Defendant, et al,; (B) refusing to plead guilty to false assault upon correctional staff court cases, (C) possessing prison staff's and their Aryan Nation Prisoner hitmen DNA to prove the Nazi Style biological torture, and (D)  exercising guaranteed constitutional rights under the 1st, 4th, 5th, 6th, 8th and 14th Amendments.  These malfeasant actions are set forth above and below this paragraph which are constitutional violations.

650 On March 16, 2016, Def. Meffen informed Plaintiff J. Rice to stop putting prison guards' names in mental health sick call slips or he would be punished because her job is to protect officers from his lawsuits so they don't get fired for trying to stop his family (i.e., Co-Plaintiff J. Rice will never have a radio, TV contact visit or food canteen items until Co-Plaintiffs' shut up (See Exhibit No. 40).

651 On April 20, 2016, Def. Meffen in Plaintiff J. Rice's Treatment Plan Review "authors" Client has also been reminded of the appropriate use of the sick-slip process and has significantly decreased his misuse of the sick-slip system" (See Exhibit No. 41).

652 The source of Plaintiff J. Rice's extreme emotional distress and mental anguish is the grave biological, chemical, mental, physical and sexual torturing of him so each time he clearly identifies who, what and when in sick call slips which is his right and what he is supposed to do. Therefore, Def. Meffen is only seeking to suppress Plaintiff J. Rice's voice because she doesn't want to do her job against abusive rogue prison staff.

653 On March 17, 2016, Def(s). Meffen and Rickis did refused to allow Plaintiff J. Rice to be removed off accountability which is an isolation cell where he had been since March 16, 2016 in reprisal of having prison guards DNA and trying to attain DNA testing in a lawsuit. Prisoners usually remain on accountability from 24 hours but Plaintiff J. Rice remained there from March 16 to March 19, 2016 (See Exhibit No. 42).

654 Def. Rattigan who is the Health Services Administrator and his duty in part is to answer Prisoners medical and mental health grievances forms individually, but she has repeatedly lumped Plaintiff J. Rice's grievance forms together providing board ineffective answers.

655 On June 30, 2016, Def. Rattigan did provide a broad ineffective answer to grievances filed on June 5, 13, and 29, 2016 (See Exhibit No. 43) which were in regards to:

(A) On June 5, 2016, 3x11 BMU Staff attempted to seize my sick call slip in regards to my medical ailments due to the food contamination. Then at approximately 8 PM, Def. Valla walked by my cell stating, "I read your slip and the nurse let us throw it away!" The Nurse that night was either Def(s). Donna Cardullo or Danielle Peterson. (See Exhibit No. 43).

(B) At this time, I don't know the grievance for June 13, 2016 because Def. Rattigan didn't provide me a copy of the grievance.

(C) On June 29, 2016, Def. Meffen stopped at Plaintiff J. Rice's cell door with a Sick Call Slip in her hand in regards to her racial discrimination against me and threatened to punish me for filing the said Slip which was a blatant violation of my mental health privacy rights because every prisoner was on the tier and overhead her which led to Aryan National Prisoners William Miller and Ralph Sullivan stating to me "Don't fuck with the woman Nigger or we will lynch you." (See Exhibit No. 44). Plaintiff J. Rice also made Def. Rodrigues aware of this matter because her malfeasant actions are on institutional video. (See Exhibit No. 45).

656 On June 30, 2016, Def. Rattigan denied all 3 grievances forms on grievance No. 89542 where she held "This grievance decision is in response to two grievances dated 06/13/16 and 06/29/16 regarding your complaint of Sick Slips not being addressed. You have been seen on multiple occasions for this complaint and further follow-up is not indicated. I caution you to use the grievance process as it is intended as you are at risk of losing your privileges due to abuse of the program. Also, please note, that MPCH, Inc. does not preserve unit video. Thank you." (See Exhibit No. 43).

657 On July 1, 2016, Plaintiff J. Rice filed a timely grievance appeal (See Exhibit No. 46).

658 On July 1, 2016, Def. Rattigan did provide a broad ineffective answer to grievances filed on July 27 and 28, 2016, (See Exhibit No. 47) which were in regards to:

(A) On June 27, 2016, Def. Meffen learned Aryan Nation Prisoner hitman, William Miller, had his TV on 24/7 while on phrase No 1 which is a privilege for phrase No. 2 prisoners only, but she allowed it to happen because he is working with BMU guards against me via giving his Hepatitis

"C" and HIV bodily fluids to place in my food and cell in reprisal of my (1) federal lawsuit, (2) seeking a federal probe into MCI Cedar Junction Officials crimes against Plaintiffs, et al, (3) not pleading guilty to Kasprzak court case and (4) being a Black man who speaking out proudly. (See Exhibit No. 47).

(B) Def. Meffen is allowing Plaintiff J. Rice's listed Aryan Nation Prisoner enemies to verbally harass and threatened me., i.e., Prisoner William Miller, who stated he would infect Plaintiff, et al, with Hepatitis "C" and HIV on June 23, 2016 and Prisoner Chris Fisher who threatened to stab Plaintiff J. rice and taunted said Plaintiff about setting him up on June 18, 2016 with Def. Stephen P. Fagan pm June 27, 2016 which both situations took place in front of Def. Meffen who kicks Plaintiff J. Rice out of group for no reason. (See Exhibit No. 48).

659 On July 1, 2016, Def. Rattigan denied both grievance forms on grievance No. 89869 where she held "This grievance decision is in response to three grievances submitted between the dates of 06/27/16 – 06/28/16 regarding unfair treatment. I have investigated your complaints and have found there to be no validity to your claims. Please note that you must utilize the Sick Call process and be seen by a provider or clinician prior to submitting a grievance. It is not appropriate to submit both a Sick Call Slip and grievance regarding the same issue at the same time. You are encouraged to work with your treatment team and nursing staff to address your concerns during regularly scheduled rounds. Thank you." (See Exhibit No. 47).

660 On July 2, 2016, Plaintiff J. Rice filed a timely grievance appeal. (See Exhibit No. 49).

661 On August 1, 2016, Def. Meffen informed Plaintiff J. Rice that he was "misusing the Sick Call Slip System by placing Def. Vega's and other rogue prison guards' names on it for their torture of him, i.e., (A) contaminating his food, (B) threatened to set him up for making threats or telling prisoners to kill themselves; (C) denying him access to the phone and (D) other torturing which

is causing extreme emotional distress and mental anguish that has led to ringing in Plaintiff's ears and him hearing voices.  (See Exhibit No. 50).

662 Def. Meffen has repeatedly attempted to suppress Plaintiff voice and force him to accept the grave criminal Civil and Human Violations.

663 Def. Meffen and Plaintiff J. Rice's conversations took place in the BMU while he was in mental health crisis.

664 On August 19, 2016, at approximately 10:55 AM while on the tier Def. Rickis said, "We will burn Rat Rice with Hep and HIV.  Then send him to the West Coast.  Def. Meffen said, "We already burned him with both diseases for not pleading guilty to Kasprzak's court case and rating in lawsuits and to the FBI.  That's why he's going to the West Coast so on and will never make phrase here.  (See Exhibit No. 84).

665 Plaintiff J. Rice is repeatedly threatened with infection of infectious diseases in reprisal of (A) refusing to plead guilty to Def. Kasprzak's bogus court case, (B) filing federal civil action to address the grave blatant constitutional violations which at this time Plaintiff J. Rice has another Class Action pending before the 1st Circuit Court of Appeals (i.e., Rice v. Spencer, DKT. No. 14-2004) and (C) Plaintiffs, et al, has contacted Boston FBI Agent Kevin White in regards to the Defendants , et al, Criminal, Civil and Human Rights violations in hope of an independent probe.

666 Both Def(s) Meffen and Rickis did violate Plaintiff's freedom of speech rights, due process rights, access to the Courts rights, and rights to be free from cruel and unusual punishment rights with a their threatening statements.  Plaintiff has no infectious diseases and has test results to prove it so these threats have Plaintiff in a kill or be killed situation.

667 On August 19, 2016 at approximately 10:55 AM which on the tier in the BMU Def. RIckis said,

"We will burn Rat Rice with Hep and HIV. Then send him to the West Cost." Def. Meffen said.

"We already burned him with both diseases for not pleading to Kasprzak Court case and rating

in lawsuits and to the FBI. That's why he is going to the West Coast soon and will never make

phrase here." (See Exhibit No. 96).

668 Def(s). Meffen and Rickis are willful participates in the conspiracy against Plaintiff J. Rice and

other Co-Plaintiffs with their actions and words.

669 On September 1, 2016, Def. Meffen did conspire with Def. Hill to ignore Plaintiff crisis call which

was due to Def. Hill and other rogue guards banging one Plaintiff's cell door that cause ringing in

is ears and him to hear voices telling him to last out to kill rogue guards. At approximately 3:44

PM Def(s) Santiago and Meffen walked by Plaintiff's cell door extremely quickly where he stated

to the, "I am in crisis and need to be pulled out" and they replied "We will let the crisis clinician

Know." (See Exhibit No. 112).

670 Def(s). Santiago and Meffen's actions don't make sense because they are the BMU Mental

Health Clinicians and Def. Santiago is Plaintiff's personal clinician. Simply they were in a rush to

leave the unit to cover up Def. Hill's torture of Plaintiff instead of doing their jobs because in the

past Plaintiff has informed Def. Santiago of the mental anguish and emotional distress due to

banging on his cell door every 30 minute round which is a side of effect of (A) the sensory

deprivation that he has developed since being held in punitive segregation the past 15 years

straight and (B) sensitive to noise that causes fits of rage is one of the side effects of sensory

deprivation. (See Exhibit No. 112).

671 After Def(s). Santiago and Meffen left Def. Hill said to Plaintiff "I told them not to speak to you because you refused to plead guilty to the Kasprzak case and got CO's DNA. (See Exhibit No. 112).

672 Plaintiff wants this court to know that if he mentally snaps and kills it's due to the torture of him overall and he has DNA mailed to his Co-Plaintiffs.

673 Def(s). Santiago and Meffen aren't insuring that Nurse's submitted Plaintiff's Sick Call Slips which are being thrown away because on August 10, 2016, Def. Santiago informed Plaintiff that she didn't receive his said Slips submitted to Nurses over the past week. (See Exhibit No. 114).

674 Def(s). Santiago and Meffen have a vested interest in Nurse not submitting Plaintiff said Slips which is they don't have to do their jobs, i.e., logging in the prison computer the Defendants, et al, Civil and Human Rights criminal violations of the Plaintiff in reprisal of not pleading guilty to the Kasprzak case that led to dismissal. Def. Santiago is a married woman having an extra marriage affair on her husband or fiancée. He is having this affair with Def. Leavitt who works in the BMU Unit which in part explains her participation with the conspiracy against the Class.

675 Case in point, on June 5, 2016, Def. Jane Doe No. 2 did allow Def. Valla did read the Plaintiff's medical and mental health sick call slips. (See Exhibit No. 113).

676 On October 12, 2016, Def. Meffen informed Plaintiff that he wouldn't be receiving his 1month of his DDU sentence because the Plaintiff is a 'nigger" who is going to get guards fired with their DNA to prove the death penalty system and possibly placed in prison if the FBI investigations. The time off DDU Sentences is for Aryan Nation Prisoners only! And not nigger rats.

677 From June 19 – October 7, 2016, Plaintiff was disciplinary report free and for every 90 days a prisoner is disciplinary report free, they are suppose to receive 1 month off their DDU sentence. (See Exhibit No. 134).

678 Plaintiff attended moving mental health group on November 29, 30 and December 7, 2016. Attended his one on one session with Def. Santiago on December 1, 2016 but again he wasn't provided his incentive points by Def(s) Santiago and Meffen which takes place on a weekly basis. (See Exhibit No(s). 240-241).

679 Def. Rodrigues fails to be correct the reported denial of incentive BMU points which is denying Plaintiff mental health care because the points are needed to purchase hygiene items and writing materials which is incentive for prisoners in the BMU to attend mental health groups as the BMU program is designed. (See Exhibit No(s). 83 at page No. 6 and 241)

680 On December 2, 2016, while in group Aryan Nation Prisoner Chris Fisher falsely claimed Plaintiff was eye raping Def. Jane Doe No. 6, who is a mental health clinician, making a face at her derriere as she bent over so she stopped group to attain Def. Santiago which is when Fisher decided to voluntarily leave group. (See Exhibit No. 242).

681 When Def. Santiago entered the room, Plaintiff requested to speak to her and Def. Doe No. 6 after group in private because Plaintiff head was down reading and this was Fisher only attempting to set up Plaintiff as he did on June 18, 2016. Plus Plaintiff was extremely upset because Fisher was racially discriminating against Plaintiff by falsely accusing him of eye raping a white woman which the BMU therapeutic room video would've proved Plaintiff had his head down reading. Both said defendants agreed to meet with Plaintiff after group. (See Exhibit No. 242).

682 After group both defendants refused to meet with Plaintiff on the grounds that Fisher's false

allegations were on security issue that Plaintiff should write the Superintendent (i.e., Def.

Rodrigues) about which isn't the case because it took place during a mental health group and

Fisher knew his actions were forbidden so he simply escaped the punishment of lying to staff

voluntarily leaving group because the punishment for lying to staff is a D-Report and placement

in an isolation accountability cell for at least 24 hours.  (See Exhibit No. 242).

683 Claiming issues as a security issue is a ploy employed by Def(s). Doe No. 6, Meffen and Santiago

to cover up excuse routinely use to hide them collusion with BMU Guards and Aryan Nation

Prisoners conspiracy in the form of the death penalty system being used against Plaintiff J. Rice.

684 Doe No. 6 in the past had to remove Fisher from group which the first time was due to Fisher

becoming upset due to Plaintiff and Doe No. 6 sharing a conversation about the pending

elections between Clinton and Trump.  The underlining factor was Plaintiff a Black man was

speaking to Doe No. 6 who laughed and smiled which caused Fisher become ire showing his

white racist jealously due to Doe No. 6 is a pretty white woman which he verbally expressed.

685 On November 10, 2015 at noon med rounds in the BMU Unit at MCI Cedar Junction, Def.

Jennifer DosSantos, who is a registered nurse, refused to stop at Plaintiff J. Rice's cell door to

give him his meds and stated to him, "I ain't speaking to you because you're trying to get CO's

[i.e. Correctional officers] fired with their DNA and my kids father CO Joshua Riley too.  Burn of

HIV and Hep Nigger that we will give you for rating on us." (See Exhibit No. 51).

686 Here Def. DosSantos did deny Plaintiff J. Rice medical care and racially discriminated against him

in reprisal of having DNA of rogue prison guards including the rogue married Prison Guard

Joshua Riley who she has an out of wedlock illegitimate bastard baby with that due to Def. Riley

cheating on his wife with Def. DosSantos who is a whore.

687 On September 8, 2015, Plaintiff J. Rice filed a grievance in regards to be how throughout the month of August, 2015 he filed several unanswered sick call slips for the following medical ailments (A) trouble seeing and reading because Plaintiff had been denied his reading glasses for over four years where he is legally blind and (B) Body shaking, diarrhea, headaches grave chest pain, stomach aches that was due to 3x11 Shift BMU Guard/Def(s). Vega, Pakuris, Lontok, Cafarelli, Hill and others) contaminating Plaintiff's good (See Exhibit No. 52).

688 On March 5, 2015, on the 3x11 Shift, while Plaintiff J. Rice was in therapeutic room where Def. Jane Doe No.1, who first name is Stacy but last name unknown and she is a white female nurse with Jet Black hair did conduct a mocked medical evaluation for sick call slips without physically possessing the said slips and only prescribed Plaintiff J. Rice a 3 day aspirin order for us medical ailments of (A) food contamination where his body is shaking, diarrhea, trouble breathing, headaches, and body temperature drop; (B) Bed/linen contamination where his body is itching and breaking out in rashes; (c) eye trouble where he had been denied his reading glasses over four years and (D) allergy problems where he is sneezing , nose running and eye itching. Def. Jane Doe No. 1, also stated she couldn't order a toxicology blood testing and if I keep filing sick call slips and grievance forms then I will lose the privileges to file both said forms." Furthermore, the medical examination wasn't held in the privacy of the medical protocol room but in the therapeutic room in the presents of other prisoners. (See Exhibit No. 53).

689 Here Def. Jane Doe No. 1 did deny Plaintiff J. Rice medical care and medical privacy.

690 On March 11, 2015, Def. Rattigan didn't provide an adequate answer to Plaintiff J. Rice's grievance against Def. Doe No. 2 where she held "Please be advised that your previously submitted sick calls have been addressed. The issues in which you describe in this grievance with the exception of your physical complaints of food contamination were not listed on your

previous forms. I encourage you to utilize the sick call process and submit your forms directly to

nursing staff for triage. As previously stated, medical complaints not previously addressed using

the proper protocol will be returned to you. Forms submitted to this office will not be returned

or forwarded. (See Exhibit No. 53).

691 On April 23, 2015, Def. Albohn, who is the Grievance Coordinator for MPCH Services Inc., denied

Plaintiff's appeal in regards to Def. Doe No. 1 mock examination where she held "Upon

researching your appeal, I was informed the GI issue was address. The HSA recommended you

to utilize the sick call process. You are encouraged to follow protocol by submitting the other

issues described on a sick call slip and giving the slip(s). Thank you for your correspondence (See

Exhibit No. 54). Therefore, Def. Albohn failed to correct the denial of medical care and privacy

by Def. Doe No. 2.

692 On May 11, 2106, Def. Hameed did willfully deny Plaintiff J. Rice medical care to cover up the

retaliatory food contamination with chemical agents, other agents and bodily fluids, i.e., causing

his body to shake , him to spit up blood, stomach pains, diarrhea, bones to hurt, headaches, him

to wheeze and more ailments where Def. Hameed stated in response to reading my sick call slip

"Nothing is wrong with you and I am not going to do nothing for you because we don't

contaminate food. If you stop rating us out in lawsuits and to the FBI about our DNA and plead

guilty in court to our charges then you wouldn't have these problems." (See Exhibit No. 55).

693 Def. Hameed denied Plaintiff J. Rice's request for a toxicology blood and any and all other blood

test which is clearly in reprisal of him NOT Pleading guilty to the Kasprzak case and exercising his

freed of speech rights against the Defendants, et al. Therefore, Def. Hameed did deny Plaintiff

medical care, violated his freedom of speech rights, subjected him to cruel and unusual

punishment and violated Plaintiff's due process rights. Furthermore as set forth above and

below Plaintiff's, et al, have food samples with DNA (i.e., blood, feces, hair saliva, semen and urine) chemical agents, drugs and other agents placed in it by the defendants, et al, that prove Def. Hameed's deliberate indifference to Plaintiff J. Rice's medical ailments and concerns.

694 On May 16, 2016, Def. Marianne Dolan at approximately 8:22 AM stopped at Plaintiff J. Rice's cell door attempting to evaluate him on the tier in the presence at every prisoner on the tier for his medical ailments due to the food contamination as cited above.

695 Plaintiff informed her I only discuss my medical issues in private which she said, "We will pull you out later." Please note, there was no reason for her to stop at Plaintiff's cell because he doesn't take any medication and the routing for examining Prisoners in the BMU is after lunch in the afternoon. This was Def. Dolan attempting to circumvent a proper examination and violating Plaintiff medical privacy rights. (See Exhibit No(s). 56-58).

696 Then at approximately 11:40 AM Def. James M. Cronin, who Plaintiff mistaken labeled "Ron Cronin in his grievances, came up to Plaintiff's cell door threatened him via stating, "Marianne wanted me to let you know if you came out saying the 3x11 shift poisoning your food we will give you a D-Report [Disciplinary Report]. This Plaintiff informed him "He wanted to speak with mental health" which never took place. (See Exhibit No(s). 56-58).

697 At approximately 11:42 am, Def. Cronin came back to Plaintiff J. Rice's cell door asking if he was in mental health crisis, and Plaintiff said, "NO."

698 At approximately 12 PM, Def. Badger came to Plaintiff's cell door asking him if he wanted to be medically examined by Def. Dolan which Plaintiff refused cut at fear from being punished. (See Exhibit No(s). 56-58).

699 Def(s). Cronin and Dolan did violate Plaintiff J. Rice's freedom of speech right to be free cruel and unusual punishment, privacy rights, and Due Process rights.

700 On or about July 28, 2016, Def. Rodrigues concluded that the Plaintiff's allegations against Def(s0> Cronin and Dolan were "unfounded." Therefore, Def. Rodrigues failed to correct the Constitutional violations in Plaintiff's grievance. (See Exhibit No(s). 59 and 97).

701 Plaintiff J. Rice exhausted all his grievance administrative remedies above and below, but due to the mail censoring, he hasn't received back copies of the final decisions.

702 On or about July 28, 2016,at the order of Def. Hameed four tubes of blood would be drew of why . (See Exhibit No. 85).

703 On August 18, 2016, Plaintiff was provided with a one page results which it doesn't take four tubes of blood to attain said results. Plaintiff has continued to request the other results, but they haven't been furnished with them. (See Exhibit No(s). 85-86).

704 Plaintiff wants to know what blood test were performed, the results or if the blood was even tested because Def. Hameed has a history of forcing Plaintiff to take Hepatitis and HIV blood test at the direction of the Defendants to learn if they were successful in infecting him including her testifying in Suffolk Superior Court in a Civil proceeding that she misused a hunger strike force medical court order that Defendants attained against Plaintiff to test him for both diseases which has absolutely nothing to do with a hunger strike especially where in the past, Plaintiff tested NEGATIVE for both diseases.

705 Plaintiff fears his blood was given to law enforcement to set him up for a crime or to contaminate DNA in his present wrongful conviction where he is working with ProBono Organizations for DNA testing to exonerate him because the State Police and Cell Mark Labs

admits they withheld the fact there was truly no DNA match to Plaintiff and the DNA sample were mixed up at his 1998 murder trial.

706 On September 12, 2016, Def. Guerara did examine Plaintiff J. Rice in regards to Sick Call Slips he filed against the 3x11 Shift BMU Guards (i.e., Def(s). Hill, Vega, Wolschon) contaminating his food that caused his body to shake, bones hurt, headaches, feel like he's about to have a seizure and stomach pains, and other ailments. Def. Guerara asked Plaintiff stated, "No because it only happened on the 3x11 Shift who are putting chemical agent in your food every night. The only problem I am having now is chest pains." Def. Guerara replied, "You're not having problems now so you're fine." Then Def. Guerara took Plaintiff's blood pressure and sent him back to his cell. (See Exhibit No. 113).

707 On September 5, 2016, Def. Jane Doe 3 did allow Def. Wolschon grab and read Plaintiff's Sick Call Slip which he said to her "I need to read this when we get off the tier to make sure that nigger isn't writing you a love letter on Sick Call Slips" which she agreed with. (See Exhibit No. 115).

708 On September 16, 2016 at approximately 7:56 PM, Def. Doe No. 3 did again allow Def. Wolschon to grab the Plaintiff's said Slip stating, "I must see if he's writing you a love letter." Then he handed it to her and she read it aloud on the tier and then she said, "We will give that dirty nigger rat Hep and Aids to teach him about rating about our DNA." Def. Wolschon said, "White Power!" Please note the said slip was about Def. Wolschon banging on Plaintiff's cell door. (See Exhibit No. 116).

709 Def(s). Doe No. 3 and Wolschon freely violate Plaintiff's medical privacy and racially discriminate against him which Def(s). Rodrigues and Rattigan freely allowed to take place because both of

them have been made aware of these constitutional violations in writing. (See Exhibit No. 115-116).

710 On August 25, 2016, Def. Lunn did draw two tubes of blood from the Plaintiff for an HCG blood test to check Plaintiff's prostrate for cancer but HCG blood test is to check if a female's pregnancy test. This test doesn't take two tubes of blood. (See Exhibit No. 117).

711 On September 17, 2016, Plaintiff was issued only the HCG test results and that's all by Def. Guerara. (See Exhibit No. 118).

712 Def(s). Hameed and Lunn are conducting secret Hepatitis and HIV blood test on the Plaintiff to learn if the Defendants, et al, were successful in infecting him which is their death penalty system, but Plaintiff keeps testing NEGATIVE. Def. Hameed testified under oath in Suffolk County Superior Court that she misused a state court order hunger strike forced medical care order to test Plaintiff for Hepatitis. Therefore, Plaintiff J. Rice is in a kill or killed situation which Plaintiff has DNA evidence to prove so if he is forced to kill its due to no one listening to him.

713 On July 30, 2015, sometime between 7:30 PM – 8:30 PM, Def. Jane Doe No. 4 (who is a white Nurse named Stacy but her last name is unknown) came to Plaintiff's cell door stating "Do you want to come out to be examined for your sick call slips tonight or tomorrow afternoon?" which Plaintiff stated, "The afternoon because my illness is due to the 3x11 Shift contaminating my food and assaulting me so I fear being in the medical protocol room with them because they may assault me again!" As leaving the tier, Def. Doe No. 4 said, "Fuck that nigger. He ain't getting no care because I am going to lie and say he refused." (See Exhibit No. 127).

714 On July 31, 2015, at morning med rounds, Plaintiff asked Def. Mocha if he was going to be screened for his sick call slips which she replied that she would have an answer at noon. Then at

noon med rounds, Def. Mocha acted as if Plaintiff was in distress which Plaintiff replied 'This isn't mental health and I don't want to discuss my medical issues on the tier among other prisoners." She said, "Go file a grievance then." As she was walking down the tier, she said, "Let that federal rat keep eating everybody's cigarette spit like he did at breakfast and lunch today! We didn't care if his body is shaking; if he doesn't have his reading glasses or any other problem. We are going to give him HIV and Hepatitis. (See <u>Exhibit No. 121</u>).

<u>715</u> The on the 3x11 Shift at approximately 8:01 PM, Def. Wolschon came to Plaintiff cell door stating "Do you want to come out for medical so we can beat your nigger ass in the medical protocol room where there are no cameras? The unknown Nurse a.k.a. Def Jane Doe No. 5 was suppose to ask me to come out my cell but she was to bus stating "Rice ate cigarette spit, aids bread and we are going to infect him for rating to the FBI." Please note, the Plaintiff is the only prisoner in the BMU Unit asked to come out his cell on the 3x11 Shift where every other prisoner is taken for medical on the 7x3 shift. The Defendants, et al, just want to set Plaintiff up for a false assault so they can assault him and issue him a false assault case.

<u>716</u> On October 5, 2016, Plaintiff was examined by Def. Hameed who refused to provide him medical care (A) allergies where Plaintiff's nose is running, eyes itching, coughing and sneezing; (B) food contamination where Plaintiff's body's shaking, feel like he wants to have a seizure, stomach aches, bones hurt, headaches among other ailments and (C) toxicology blood test so Plaintiff can learn what's been placed in his food. (See <u>Exhibit No. 128</u>).

<u>717</u> Def. Hameed has been cover up her Co-Defendants death penalty system and the contamination of Plaintiff's food with chemical agents and other agents where in State Court Civil litigation she field no less than two affidavits to cover it up. (See <u>Exhibit No(s). 128-130</u>).

718 On October 6, 2016 at approximately 7:47 PM, Def. Pakuris did attempt to grab Plaintiff's sick call slip hat he was trying to give to Def. Doe No. 6, but Plaintiff refused to let it go which Def. Doe No. 6 found funny and walked by Plaintiff's cell.  (Se Exhibit No. 135).

719 Plaintiff called Def. Doe No. 6 back to his cell, but she refused to come and then Def. Wolschon violently snatched the said slip ripping it stating, "He's trying to write you a love letter on a sick call slip."  (See Exhibit No. 135).  This is the first time that Def. Wolschon has violated Plaintiff's medical and mental health privacy via grabbing Plaintiff's sick call slips to read.

720 Despite the Plaintiff not ever earning a disciplinary report for ever writing any female prison staff, Def. Rodrigues and Def. Rattigan has failed to address or remedy these violations of Plaintiff's constitutional rights.

721 On November 8, 2016 at approximately 8:17 PM, Plaintiff J. Rice handed Def. Dolan a sick call slip which we attempted to evaluate the Plaintiff on the tier in violation of his privacy so Plaintiff called mental health crisis but no one responded.  Minutes later in an attempt to cover up her violation at approximately 8:26 AM, Def. Dolan had to BMU Guards to ask Plaintiff to come out to speak with her but Plaintiff refused.

722 On January 10, 2017, Def. Collins wrote Plaintiff J. Rice stating she received Plaintiff letter dated November 8, 2016 addressed to "Federal Officials" which out lined how he is being denied medical and mental health care which is Def. Collins role to oversee and she had failed to insure Plaintiff J. Rice receive said care.  (See Exhibit 305).

723 On December 1, 2014, Def(s) Resendes, Chris Pacheco and Badger did give Aryan Nation Prisoner hit man Francis Lang a hand cuff key while in was in the restart chair area meeting with

mental health clinicians, i.e., Def(s). Chapman and Debra Vogt were planning on an assault upon Plaintiff J. Rice.  (See Exhibit No(s). 60-62).

724 At approximately 1:30 PM on December 1, 2014, Def. Resendes did place the handcuffs and leg shackles on extremely tight on Plaintiff J. Rice and said to him "Today is our revenge for the DNA lawsuit, DNA restraining order and Kasprzak case dismissal."  Then said Plaintiff stepped out his cell in full hand and leg restraints and turned the corner to go to group where Lang had removed his leg shackles at the restart chair and came at Plaintiff with a telephone receiver in his hand which he used to beat over the Plaintiff's over the head with until it broke and then stabbed Plaintiff with the broken phone receiver.  (See Exhibit No(s) 60-62).

725 While this assault occurring Def(s). Resendes, Pacheco and Badger were cheering him on via stating "Kill that nigger for fucking us over for the Kasprzak case DNA Lawsuit and DNA restraining order."  Pacheco stated "Let me help you kill that nigger" then Def. Pacheco did assault Plaintiff via spraying him in the face with chemical agent which is all while Plaintiff was still in full hand and leg restraints and Lang was in absolutely "NO" restraints and Lang never was sprayed with chemical agents.  (See Exhibit No(s). 60-62).

726 Next Lang and Plaintiff fell to the ground and Lang bit Plaintiff in the back of the neck.  Def. Resendes did assault Plaintiff via twisting his left wrist back which caused deep indentations and swelling of the left wrist.  Due to Lang's assault, Plaintiff received numerous facial and head injuries.  After Plaintiff was picked up off the ground, je was moved to the shower where Def. Resendes continued to assault Plaintiff via twist back his left wrist stating, "Nigger you will spark a scandal if you're successful in attaining a federal investigation into our Death Penalty System. You, your mother, Brianna and Patricia better shut up or you all are dead niggers." (See Exhibit No(s). 60-63).